**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**TRI–S CORPORATION, Respondent.**

No. 9839.

United States Court of Appeals
Tenth Circuit.

Aug. 22, 1968.

---

Benjamin M. Parker, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Albert J. Beveridge, III, Attys., Dept. of Justice, on the brief), for petitioner.

Gene W. Reardon, Denver, Colo. (Julie M. Reardon, Denver, Colo., on the brief), for respondent.

Before MURRAH, Chief Judge, PHILLIPS, and HILL, Circuit Judges.

PHILLIPS, Circuit Judge.

At the times here material, Tri-S Corporation, hereinafter called the taxpayer, was a Colorado corporation. On October 10, 1960, the taxpayer purchased 80 acres of raw and wholly unimproved land for $167,750. On October 6, 1961, it transferred about 20 acres of such land [1] to the State of Colorado for $130,-000.

In its income tax return for its taxable year, ended October 31, 1961, the taxpayer reported the income from such sale as a capital gain.[2] The Commissioner of Internal Revenue decided it was ordinary income and assessed a deficiency.

On petition for review, the Tax Court held the income was taxable as a capital gain. The matter is now before this court on petition for review by the Commissioner of Internal Revenue.

The facts out of which the controversy arose, in addition to those above stated, are as follows:

During all times here material, the taxpayer was engaged in the business of a residential land developer, and developed and sold improved lots and homes to individual buyers. "It sometimes" purchased "finished sites," built "houses on such sites" and sold "them to prospective home owners."

When it purchased the 80-tract of raw land, the taxpayer intended and planned at some time in the future to develop 60 acres of the 80-acre tract by constructing streets, sidewalks, gutters, sewers, and water lines, and to build homes on lots and sell them to prospective customers. It also then intended and planned at some time in the future to develop the 20-acre tract sold to the State as a shopping center site and to improve such 20-acre tract for that purpose. Such future plans were evidenced by a master plat of the 80-acre tract, showing planned future development, prepared by the taxpayer before April 7, 1961.

On the latter date, the taxpayer, except for the preparation of such plat, had not taken any steps whatsoever looking to the improvement of such 80 acres of raw land and at no time had it made any attempt to sell any of such raw land.

In 1961 the State of Colorado desired to acquire the 20-acre tract, later conveyed to it, for the construction of an arterial highway, extending southerly from Interstate Highway No. 70. On April 7, 1961, the Colorado State Highway Department notified the taxpayer that condemnation proceedings would be instituted to take a portion of the land (the 20-acre tract) by eminent domain for use as an arterial highway extending southerly from Interstate Highway No. 70.

Negotiations between the taxpayer and the Highway Department followed and on July 25, 1961, the taxpayer agreed to convey such 20-acre tract to the State of Colorado for $130,000. The conveyance was consummated on October 6, 1961.

The Tax Court found the facts as above stated, and further found:

The taxpayer, "after April 7, 1961," was not holding the 20-acre tract "'primarily for sale to customers in the ordinary course of his trade or business'

---

1. Hereinafter called the 20-acre tract.

2. The taxpayer used the accrual method of accounting.

within the meaning of section 1221(1)"[3] and did not sell such 20-acre tract "to a customer in the ordinary course of its business. It did not seek the sale to" the State of Colorado "or any other sale of that raw land.

"The property sold was a capital asset at the time of the sale."

In Coffey v. United States, 10 Cir., 333 F.2d 945, 947, the court quoted with approval from Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285, 287, as follows:

"It is the well settled rule that whether property sold or otherwise disposed of by a taxpayer was held by him for sale to customers in the ordinary course of his trade or business, within the meaning of section 117 [§ 1221], is essentially a question of fact. * * * "

The taxpayer never at any time held such 20-acre tract for sale in its raw state to customers in the ordinary course of its trade or business. It intended to sell such 20-acre tract at some time in the future, only after it had improved the same so as to make it suitable for a shopping center or homesites.

During the period from April 7, 1961, to October 6, 1961, it is clear under the facts that the taxpayer was not holding the 20-acre tract primarily for sale to customers in the ordinary course of its trade or business. While prior to April 7, 1961, it had intended at some time in the future to improve the 20-acre tract, so as to render it suitable for a shopping center and to make disposition of it for that purpose, from and after that date it would have been futile for it to have undertaken to carry out such future plans. It clearly did not hold such land for sale to customers in the ordinary course of its trade or business on July 25, 1961, when it agreed to convey the 20-acre tract to the State of Colorado, and on October 6, 1961, when it consummated such conveyance.

Accordingly, the decision of the Tax Court is affirmed.

3. 26 U.S.C.A. § 1221 (1954 Ed.) in part here material reads:

"§ 1221. *Capital asset defined*

"For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;