**JULEO, INC., a New Jersey corporation**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 71-2102.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12 (6) Oct. 20, 1972.

Resubmitted Under Third Circuit Rule 12(6) March 19, 1972.

Decided June 27, 1973.

Certiorari Denied Dec. 10, 1973. See 94 S.Ct. 737.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, Robert S. Watkins, Attys., Dept. of Justice, Tax Div., Washington, D. C., for appellant.

Ralph Mayo, Mayo & Lefkowitz (Robert B. Hendler, New Brunswick, N. J., on the brief), for appellee.

Submitted Under Third Circuit Rule 12(6) Oct. 20, 1972.

Before STALEY, GIBBONS and ROSEN,* Circuit Judges.

Resubmitted Under Third Circuit Rule 12(6) March 19, 1973.

Before STALEY, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This is an appeal from the decision of the Tax Court that a 16.5 acre tract of land was a capital asset at the time it was transferred to the State of New Jersey as a result of condemnation proceedings. The following is a statement of the Tax Court's findings as to the basic facts—the actual happenings—in this case.

The taxpayer is a New Jersey corporation organized for the purpose of real estate development, homebuilding, and sales. In 1955 it purchased a 100 acre tract of land for the purpose of development and sale. Shortly thereafter the process of development began. Subdivision maps were filed, engineering work was done, and preliminary approval for the subdivision of the entire 100 acres was obtained. In 1957 final approval was secured from the township for residential development of the section of the tract which included a small portion of the 16.5 acres involved in this case.

During the year 1958 the taxpayer became aware of New Jersey's plan to condemn approximately 16 acres of the larger tract in highway construction. At that point all planning for the development of the land scheduled for condemnation ceased. Work did continue, however, on the remainder of the 100 acre tract. After the taxpayer learned of the condemnation plans with respect to the 16.5 acre parcel, it advertised and sold residential lots in the remaining portions of the 100 acre tract. In addition, two commercial lots of 5 acres each were sold, and 10 acres on the highway were leased.

On January 7, 1966, the sale to the State of New Jersey was consummated. The income derived from this transaction was reported by the taxpayer as capital gain. On petition for review from the Commissioner's ruling that the gain represented ordinary income, the Tax Court upheld the taxpayer. The court in so doing held that:

"After the petitioner was notified by the state that 16.5 acres of the 100 acre tract held by the petitioner were subject to condemnation, the petitioner was not holding that portion of the tract 'primarily for sale to customers in the ordinary course of his trade or business' within the meaning of section 1221(1). The 16.5 acre portion of the tract was a capital asset at the time of its sale to the state."

Prior to the condemnation notice, according to the court's findings, the land in question was held primarily for sale to customers in the ordinary course of trade or business.

In reaching its conclusion that after the condemnation notice the land became a capital asset, the court relied upon

---

* Judge Rosen died before the opinion was filed.

CIR v. Tri-S Corp., 400 F.2d 862 (C.A. 10, 1968). The *Tri-S* case was cited as holding that a condemnation notice converted land held primarily for sale to customers in the ordinary course of business into a capital asset. Although this was the reasoning of the Tax Court in *Tri-S*,[1] the circuit court of appeals did not affirm on that ground. Rather, the appeals court held that the taxpayer never held the land in question for sale in its raw state to customers in the ordinary course of its trade or business. That court did not comment upon the Tax Court's finding that up to the time of condemnation the land involved was not held as a capital asset. Clearly, the Tax Court's reliance on the *Tri-S* case was error.

 Of course, this court is not bound by a conclusion induced by an erroneous view of the law. Municipal Bond Corp. v. CIR, 341 F.2d 683 (C.A.8 1965). A condemnation notice does not change land held primarily for sale to customers in the ordinary course of business into a capital asset. See Stockton Harbor Industrial Co. v. CIR, 216 F.2d 638 (C.A.9 1954).

 Further, if there had been no condemnation, the land which was part of the development would have been sold as such and the proceeds treated as ordinary business income. When the condemnation took place, the owner sought to establish a value, for purposes of the condemnation award, that reflected what the owner would have received if the land had been sold as developed. Consequently, to treat the income actually received, which in large part reflected the intent and plan of the owner, as capital gains rather than ordinary income would appear to be inequitable. What development occurred on the remainder of the 100 acres prior to notice of condemnation necessarily enhanced the value of the 16 acres condemned. This is illustrated by the fact that the pro-rated purchase price of the 16 acres was $10,032.62 and the condemnee received $97,650.63. In view of the present concern about the uneven impost of the tax laws, it does not appear warranted to interpret the law in such manner as to confer still another benefit not clearly mandated by the statute and regulations, and as stated above, there is no case authority for doing so. For the foregoing reasons, the decision of the Tax Court will be reversed and the cause remanded for further proceedings consistent with this opinion.

GIBBONS, Circuit Judge (dissenting).

The taxpayer is a corporation engaged in the business of real estate development and home building. In 1955 it purchased a 100-acre tract of land in Bridgewater Township, New Jersey, intending to develop and sell. Shortly thereafter taxpayer filed subdivision maps and had some engineering work done. Preliminary approval for a subdivision of the entire tract was obtained in 1956. That preliminary approval conferred on the landowner only the limited right, during a three-year period, to submit the whole or parts of the plan for final approval upon the same general terms and conditions of the preliminary approval. N.J.Stat.Ann. § 40:55–1.18. Final approval of sections of the entire tract was requested and obtained in 1957. Only a small part of the 16.5 acres of the tract, sale of which produced the gain involved in this case, was included in such final approval. During 1958 the taxpayer learned that the State of New Jersey contemplated acquiring approximately 16 of the 100 acres for use in the construction of a highway, Route 287. After learning of the State's plans the taxpayer ceased further development of the 16.5 acre tract. The preliminary subdivision approval as to all of the 16.5 acres for which final approval had not been obtained expired in 1959 under the terms of the Municipal Planning Act. N.J.Stat.Ann. § 40:55–1.18. The State's highway plans were not

---

1. Tri-S Corp. v. CIR, 48 T.C. 316 (1967).

formalized until 1960. It was not until 1962 that the taxpayer and the State began discussions respecting condemnation. In 1965 the Commissioners of Condemnation made an award of approximately $50,000 for the 16.5 acres. The taxpayer appealed this award to the Superior Court of New Jersey, and in 1965 obtained a judgment in condemnation of $97,650.63. The sale pursuant to the condemnation judgment was not closed until January 7, 1966, and on its 1966 tax return the taxpayer reported a capital gain on that sale in the amount of $70,950.30. The remaining 83.5 acres were developed in accordance with its final subdivision approval and sold or leased. The Tax Court, rejecting the Commissioner's deficiency notice for 1966, found:

"Ultimate Findings of Fact

After the petitioner was notified by the state that 16.5 acres of the 100 acre tract held by the petitioner were subject to condemnation, the petitioner was not holding that portion of the tract 'primarily for sale to customers in the ordinary course of his trade or business' within the meaning of section 1221(1). The 16.5 acre portion of the tract was a capital asset at the time of its sale to the state."

Under section 1221 of the Internal Revenue Code the term capital asset does not include "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. . . ." The word "primarily" means of first importance or principally. Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966) (per curiam). When the taxpayer first acquired the 100 acres it did so primarily for sale or lease to customers in the ordinary course of its business as a real estate developer and home builder. Thus, in 1955 no part of the 100 acres was a capital asset. But the nature of the asset, for tax purposes, is determined not at the time of its acquisition, but at the time its sale produces for the taxpayer a taxable gain or loss.

A taxpayer may, for example, acquire a farm intending to operate it. At the time of acquisition it is a capital asset. If years later the taxpayer obtains a subdivision approval and begins selling off lots, the Internal Revenue Service will insist, quite correctly, that at the time of sale the farm was held not as a capital asset but primarily for sale in the former farmer's new trade or business of land development. The converse is equally true. Land once held primarily for resale may be withdrawn from the market and held for another purpose. See Nadalin v. United States, 364 F.2d 431, 176 Ct.Cl. 1032 (1966); Ackerman v. United States, 335 F.2d 521 (5th Cir. 1964); Ridgewood Land Co., Inc. v. Commissioner, 31 CCH Tax Ct. Mem. 39 (1972); Tri-S Corp. v. Commissioner of Internal Revenue, 48 T.C. 316 (1967), aff'd, 400 F.2d 862 (10th Cir. 1968). The Tax Court found as an ultimate fact that such a change in the taxpayer's purpose for holding the 16.5 acres had taken place.

Such an ultimate finding of fact, representing as it does an inference drawn from other facts, is not in the view of this Circuit subject to the clearly erroneous rule. See Heebner v. Commissioner of Internal Revenue, 280 F.2d 228 (3d Cir.), cert. denied, 364 U.S. 921, 81 S.Ct. 285, 5 L.Ed.2d 260 (1960); Pennroad Corp. v. Commissioner of Internal Revenue, 261 F.2d 325 (3d Cir. 1958), cert. denied, Madison Fund Inc. v. Commissioner of Internal Revenue, 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 766 (1959); Kaltreider v. Commissioner of Internal Revenue, 255 F.2d 833 (3d Cir. 1958); Philber Equipment Corp. v. Commissioner of Internal Revenue, 237 F.2d 129 (3d Cir. 1956). But see Yara Engineering Corp. v. Commissioner of Internal Revenue, 344 F.2d 113 (3d Cir. 1965) (per curiam). In reviewing such ultimate findings of fact:

"where the ultimate fact reasonably flows from the basic facts and especially where the basic facts are persuasive of the ultimate fact so found, this court will not disturb the finding

of the trial court." Pennroad Corp. v. Commissioner of Internal Revenue, *supra*, 261 F.2d at 328.

The determination whether real property is held primarily for sale to customers in the ordinary course of business is, of course, a factual determination. *E.g.,* Yara Engineering Corp. v. Commissioner of Internal Revenue, *supra;* Broughton v. Commissioner of Internal Revenue, 333 F.2d 492, 494–495 (6th Cir. 1964) ; Kaltreider v. Commissioner of Internal Revenue, *supra*. Several factors, no one of which is determinative, have been said to be significant in making the determination.

> "No single factor or test is dispositive. Factors considered are: (1) the purpose for which the property was acquired; (2) the purpose for which it was held; (3) improvements, and their extent, made to the property by taxpayer; (4) frequency, number and continuity of sales; (5) the extent and substantiality of the transactions; (6) the nature and extent of taxpayer's business; (7) the extent of advertising to promote sales, or the lack of such advertising; and (8) listings of the property for sale directly or through brokers." Kaltreider v. Commissioner of Internal Revenue, *supra*, 255 F.2d at 838. (footnotes omitted).

In this case (1) the property was originally acquired for resale in the ordinary course of business; but (2) the resale purpose terminated with respect to 16.5 acres by force of necessity, and for *eight years* the taxpayer held that portion for a purpose other than resale in the ordinary course of business; (3) no improvements were made to the 16.5 acres and even the preliminary subdivision approval expired five years before the sale; (4) there were no sales from the 16.5 acres; (5) the only transaction was the sale pursuant to the judgment of condemnation; (6) retention of the 16.5 acres for eight years was inconsistent with the nature of the taxpayer's business; (7) the taxpayer did not advertise or promote sale of the 16.5 acres; and (8) the taxpayer did not list the property for resale through brokers. Under these circumstances I simply cannot agree with the majority that the Tax Court's ultimate findings of facts do not flow from the basic facts or that the basic facts are unpersuasive of the ultimate facts so found. *See* Pennroad Corp. v. Commissioner, *supra*. There is no reason for this court to be so zealous of guarding the revenue that we should arrogate to ourselves the task of fact finding which Congress entrusted to the Tax Court. I would affirm.