497 F.2d 862
 74-1 USTC P 9485
 JOSEPH LUPOWITZ SONS, INC. (Esther Meisler, President), Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Harold B. LUPOWITZ and Sophie Lupowitz, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
Esther MEISLER, Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 Nos. 73-1588 to 73-1590.
 United States Court of Appeals, Third Circuit.
 Argued Jan. 21, 1974.
Decided May 22, 1974.
 
 John Y. Merrell, Richard P. Buskell, McLean, Va., for Joseph Lupowitz Sons, Inc., Harold B. Lupowitz, Sophie Lupowitz and Esther Meisler.
 Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, William A. Friedlander, William S. Estabrook, III, Tax Div., Dept. of Justice, Washington, D.C., for Commissioner of Internal Revenue.
 Before McLAUGHLIN, GIBBONS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 We have before us three appeals from the Tax Court presenting two different factual situations, but involving related parties and similar issues.
 
 
 2
 Appeal No. 73-1588 ('Penn Wynn') involves transfers made by Joseph Lupowitz Sons, Inc. to Penn Wynn, Inc. The Commissioner contended and the Tax Court held that these transfers resulted in a debtor/creditor relationship between the two companies.
 
 
 3
 Appeals Nos. 73-1589 and 73-1590 ('Mansfield') involved transfers made by Mansfield Homes, Inc. to Lupowitz. The Commissioner contends that the individual taxpayers Harold Lupowitz and Esther Lupowitz (Meisler), each of whom owned 50% Of Mansfield Homes stock, received constructive dividends in 1965 as a result of such transfers. The Tax Court disagreed and held that a bona fide obligation arose between the two companies.
 
 
 4
 We deal first with the Penn Wynn appeal.
 
 APPEAL NO. 73-1588 (PENN WYNN)
 
 5
 This is an appeal from a decision of the Tax Court holding that for the years 1965 and 1966 a debtor/creditor relationship existed between Penn Wynn, Inc. (hereinafter 'Penn Wynn') and Joseph Lupowitz Sons, Inc. (hereinafter 'Lupowitz'). Having found that Lupowitz was the creditor of Penn Wynn, the Tax Court implied an agreement for the payment of interest and concluded that such interest was includable in Lupowitz's gross income. As a result, Lupowitz was subject to the personal holding company tax. 26 U.S.C. 541 et seq.[1] The Tax Court made the following findings.
 
 
 6
 Lupowitz is a closely held corporation, the voting stock of which in 1958 was equally held by four related individuals (Sidney Lupowitz, Emanuel Lupowitz, Martha Lupowitz Kaufman and Harold B. Lupowitz).[2] Planning the construction and operation of a new apartment building, and wishing to limit their liability, they incorporated Penn Wynn, Inc. in February 1959. Each of them paid $2,500 for a one-fourth stock interest in Penn Wynn. On February 24, 1959 Lupowitz transferred $73,000 to Penn Wynn. The following day Penn Wynn purchased an $80,000 building site. Subsequently in 1960, a $2,600,000 construction loan was obtained by Penn Wynn from Frankford Trust Company, but on the condition that no loan disbursements would be made until $543,000 of Penn Wynn's own money was committed to the project. As of August 1960, the time that the required funds had been committed, $575,000 had been transferred from Lupowitz to Penn Wynn.[3] Frequent transfes of money between the two 'brother-sister' corporations continued, but the net monies transferred to Penn Wynn from 1960 through 1966 never totalled less than $548,500.[4] The parties (Lupowitz and Penn Wynn) never entered into any oral or written agreement evidencing these transactions. No agreements, express or otherwise, were ever made respecting repayment of principal, default, payments of interest, and the like.
 
 
 7
 In 1962, upon audit of Lupowitz's 1960 and 1961 returns the Internal Revenue Service proposed an accrual of interest on the monies transferred. Lupowitz consented to these adjustments and paid the resulting income tax deficiencies. Interest for 1962 was accrued with consent, and the resulting tax deficiency paid after an audit in 1965. After the audits, Penn Wynn was permitted to deduct the interest for 1960, 1961 and 1962, although these deductions provided no tax benefit to Penn Wynn due to losses in each of the years. Lupowitz voluntarily accrued interest in the years 1963 through 1966.
 
 
 8
 The accrued interest for 1960 through 1963 was actually paid to Lupowitz by Penn Wynn. No 1964 payment was made. In 1965 and 1966 only an amount sufficient to cover the tax liability generated by the interest was paid.
 
 
 9
 The Internal Revenue Service determined that for 1965 and 1966 because Lupowitz's interest income exceeded 10% Of its ordinary gross income, and because no dividends were paid, the rents otherwise received by Lupowitz became personal holding company income.[5] Personal holding company tax was assessed. Lupowitz contested that liability in the Tax Court claiming the transfers which it made to Penn Wynn were capital contributions and not loans. The Tax Court, however, held as an ultimate finding of fact that the monies transferred from Lupowitz to Penn Wynn were loans from which interest income arose.
 
 
 10
 Lupowitz challenges not the basic facts found by the Tax Court but its ultimate finding of fact,[6] which represents an inference drawn from the basic facts. It is settled that such an ultimate finding is reviewable as an issue of law and is not subject to the clearly erroneous rule. See discussion and cases cited in Juleo, Inc. v. Commissioner of Internal Revenue, 483 F.2d 47, 50-51 (3d Cir. 1973) (Gibbons, J., dissenting on other grounds), cert. denied, 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973) in particular, Kaltreider v. Commissioner of Internal Revenue, 255 F.2d 833, 837 (3d Cir. 1958), and Pennroad Corp. v. Commissioner of Internal Revenue, 261 F.2d 325 (3d Cir. 1958), cert. denied 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 766 (1959). Thus, out of the rather complicated factual pattern described above, the one question arises: were the funds transferred from Lupowitz to Penn Wynn, loans or contributions to capital?
 
 
 11
 This Court has previously considered the question of what is debt and what is equity, and has established guidelines for determining the true nature of a 'debt vs equity' transaction. Fin Hay Realty Co. v. United States, 398 F.2d 694 (3d Cir. 1968). There we enumerated sixteen criteria for judging the true nature of an investment which appeared in the form of a debt. These criteria[7] were specified as
 
 
 12
 '(1) the intent of the parties; (2) the identity between creditors and shareholders; (3) the extent of participation in management by the holder of the instrument; (4) the ability of the corporation to obtain funds from outside sources; (5) the 'thinness' of the capital structure in relation to debt; (6) the risk involved; (7) the formal indicia of the arrangement; (8) the relative position of the obligees as to other creditors regarding the payment of interest and principal; (9) the voting power of the holder of the instrument; (10) the provision of a fixed rate of interest; (11) a contingency on the obligation to repay; (12) the source of the interest payments; (13) the presence or absence of a fixed maturity date; (14) a provision for redemption by the corporation; (15) a provision for redemption at the option of the holder; and (16) the timing of the advance with reference to the organization of the corporation.'
 
 
 13
 398 F.2d at 696. Applying these criteria to the instant case we find that the Lupowitz-Penn Wynn transactions more closely resemble capital than debt.
 
 
 14
 Although we regard to single factor or group of factors as determinative or controlling[8] see Fin Hay, supra; Tyler v. Tomlinson, supra, we are compelled to our conclusion by the following considerations. (a) The voting stock of Lupowitz was held by the same persons and in the same proportions as they held the capital stock of Penn Wynn. The officers and directors of both corporations were the same. (b) It was a common practice among the Lupowitz enterprises for one company to transfer funds to another without discussion as to repayment or interest. There was no express agreement or understanding regarding the repayment of monies to Lupowitz or regarding the payment of interest or the rate of interest. (c) Penn Wynn had no other assets on which to borrow monies from others. The mortgage lender was secured by a mortgage on all assets owned by Penn Wynn, as well as an assignment of future rents. (d) Penn Wynn was required to commit in excess of $500,000 of its own funds before it could receive construction money. (e) There were no documents or other formal indicia evidencing the arrangement. The transfers were noted only by entry in an Exchange Account on the books of the corporations.[9] (f) As indicated in (b) above, there was no provision for interest, and no enforceable obligation on the part of Penn Wynn to repay the monies advanced. Further, there were none of the 'protective' provisions normally insisted upon by 'true' creditors. (g) There was no provision for prepayment or for redemption on the part of Penn Wynn and no provision for acceleration of payment at the option of Lupowitz. (h) The initial advances, (if not all advances), were used to acquire capital assets (see Janeway v. Commissioner of Internal Revenue, 147 F.2d 602 (2d Cir. 1945). (i) With respect to the 'timing' of advances, the first advance was made within 25 days from Penn Wynn's incorporation. The major advances made from the period February 24, 1959 through August 8, 1960 were required for the construction of Penn Wynn House and by the terms of the construction loan. (j) Finally, we note the 'thinness' of Penn Wynn's capital structure (in relation to debt).[10] Here the debt to capital ratio (if the advances made by the taxpayer are included in debt) exceeds 400 to 1.10a
 
 
 15
 Our conclusion that the above considerations point to capital rather than debt is fortified by Trans-Atlantic Co. v. Commissioner of Internal Revenue, 469 F.2d 1189 (3d Cir. 1972).[11] Trans-Atlantic interpreted Fin Hay as having relied heavily on four of the sixteen criteria enumerated in Fin Hay. These four criteria were: (1) equal ownership of stock and 'debt'; (2) inability of the debtor corporation to repay the notes for a number of years; (3) the impossibility of the debtor corporation to otherwise raise funds; and (4) the fact that a prudent businessman would not have invested in the unsecured demand notes at their specified rate of interest. 469 F.2d at 1189.
 
 
 16
 Application of the Penn Wynn facts to the above four criteria leads to the same result as was reached in Fin Hay, (i.e. the advances made were of a capital, rather than a debt, nature). Here, as in Fin Hay, there is equal ownership of stock and debt. As in Fin Hay, the transferee of the funds (Penn Wynn) could not have repaid them for a number of years. Here, as in Fin Hay, the transferee used the proceeds of the advances to purchase its original assets and the advances represented a long-term commitment dependent on the future value of the real estate. Again, as in Fin Hay, the financial status of Penn Wynn made it highly unlikely that it could otherwise raise funds (its total assets having been pledged to its mortgagee), or that a prudent businessman would have invested in its unsecured obligations.
 
 
 17
 We are convinced by the totality of these circumstances that the advances made by Lupowitz to Penn Wynn constituted capital contributions.
 
 
 18
 The decision of the Tax Court in Appeal No. 73-1588 will be reversed.
 
 APPEALS NOS. 73-1589 AND 73-1590 (MANSFIELD)
 
 19
 The issue on these two appeals involves a determination of whether the net transfer of funds during 1965 from Mansfield Homes, Inc. (hereinafter 'Mansfield') to Joseph Lupowitz Sons, Inc. (hereinafter 'Lupowitz') resulted in constructive dividends to the common shareholders of the two corporations, Harold Lupowitz and Esther (Lupowitz) Meisler.[12] The Tax Court held as an ultimate finding of fact that these net advances were not constructive dividends but rather 'constituted a bona fide obligation of Lupowitz to Mansfield Homes representing an 'investment' in the former corporation by or for the benefit of the latter corporation.'[13] It found the following facts.
 
 
 20
 Mansfield was incorporated in 1948 and was primarily engaged in the building business. Prior to and during 1965, Harold Lupowitz and Esther (Lupowitz) Meisler each owned one-half of the outstanding stock of Mansfield and approximately one-third of the outstanding stock of Lupowitz. On April 3, 1964, Mansfield sold its remaining physical assets and received sales proceeds of $89,226.04. Except for this sale, Mansfield was not actively engaged in any business during the years involved herein.
 
 
 21
 Commencing at least as early as 1958 and continuing through 1965, Lupowitz made cash transfers to Mansfield. Commencing at least as early as 1959 and continuing through 1965, Mansfield made transfers to Lupowitz. In 1965 Mansfield transferred $30,000 to Lupowitz. In that same year Lupowitz transferred $6,000 to Mansfield, thereby resulting in a net transfer of $24,000 from Mansfield to Lupowitz in 1965. In 1966 no transfers were made by either corporation. As in Appeal No. 73-1588, there was no express agreement, either written or oral, between Mansfield and Lupowitz as to any repayment or with respect to interest on the transferred funds.
 
 
 22
 Mansfield's tax return for its taxable year 1965 showed earned surplus and undivided profits. It did not pay or declare any dividends in that year. The Commissioner determined that both Harold Lupowitz and Esther (Lupowitz) Meisler received constructive dividends in 1965 as a result of the transfer of funds between Mansfield and Lupowitz during that year.[14] The Tax Court disagreed for reasons which we find persuasive.
 
 
 23
 The Tax Court recognized that transfers between related corporations may result in constructive dividends when the transferred funds are used directly or indirectly for the personal benefit of the shareholders. Commissioner of Internal Revenue v. Makransky, 321 F.2d 598 (3d Cir. 1963); W. B. Rushing, 52 T.C. 888 (1969) aff'd as to other issues 441 F.2d 593 (5th Cir. 1971); Sammons v. Commissioner of Internal Revenue, 472 F.2d 449 (5th Cir. 1973); Glenn E. Edgar, 56 T.C. 717 (1971); cf. PPG Industries, Inc., 55 T.C. 928 (1970); George R. Tollefsen, 52 T.C. 671 (1969); aff'd431 F.2d 511 (2d Cir. 1970); Edgar S. Idol, 38 T.C. 444 (1962), aff'd319 F.2d 647 (8th Cir. 1963). However, it correctly noted that a transfer of funds between two corporations will not necessarily result in a constructive dividend to shareholders simply because there is common ownership of the transferor and transferee corporations. W. B. Rushing, supra; Sammons, supra.
 
 
 24
 Mansfield was a viable taxable entity. The transfers were part of the pattern of exchange of funds between Mansfield and Lupowitz dating as far back as 1958. These transfers were treated by both Mansfield and Lupowitz as creating an obligation at the corporate level. It is not determinative that the transfers were made without interest. What is pertinent is that the obligation existed. As the Tax Court properly noted, 'it is the retention of such an obligation at the corporate level which distinguishes cases involving excessive payment for service or property by one related corporation to another, where it can be said that the shareholders of the recipient corporation received a tangible benefit.' Sammons, supra; Sparks Nugget, Inc. v. Commissioner of Internal Revenue, 458 F.2d 631 (9th Cir. 1972) cert. denied 410 U.S. 928, 93 S.Ct. 1362, 35 L.Ed.2d 589 (1973); Worcester v. Commissioner of Internal Revenue, 370 F.2d 713 (1st Cir. 1966); Equitable Publishing Co. v. Commissioner of Internal Revenue, 356 F.2d 514 (3d Cir. 1966). Since Lupowitz was sufficiently prosperous financially, the Tax Court rejected the argument that the 'investment' by Mansfield was not supported by full value. The transferred funds were not siphoned off to or for the benefit of the taxpayers. As the Tax Court noted, the only discernible benefit to either Mansfield or taxpayers was that Lupowitz was able to obtain the use of Mansfield's funds on an interest-free basis. We agree with the reasoning of the Tax Court that this element does not afford a sufficient basis for holding that the net transfers of funds constitute a constructive dividend, cf. J. Simpson Dean, 35 T.C. 1083 (1961), and that on this record the absence of a specific business purpose in making the transfers to Lupowitz, as opposed to a general one, does not mandate a different result.
 
 
 25
 While we affirm the Tax Court in both appeals respecting the issue of constructive dividends, it has been called to our attention at oral argument and by letter dated January 22, 1974, that a remand is required in the Lupowitz appeal (No. 73-1589). The Internal Revenue Service has determined that Harold and Sophie Lupowitz are entitled to net operating loss carry-back deductions from the year 1968, which deductions affect their 1965 tax liability. For that reason counsel have agreed that whether we affirm or reverse the Tax Court on the Lupowitz appeal, it will nevertheless be necessary to remand to that Court for a recalculation and redetermination of the Lupowitz's tax liability.
 
 
 26
 Accordingly, for the reasons which we have set forth, the decision of the Tax Court in Appeal No. 73-1590 will be affirmed.
 
 
 27
 The decision of the Tax Court in Appeal No. 73-1589 similarly will be affirmed. We remand, however, for redetermination of the Lupowitz's tax liability with respect to matters other than the constructive dividend issue with which we have dealt here.
 
 
 
 [1]
 The parties have agreed that whether the complex inter-relating provisions of the Code are satisified so as to make Lupowitz liable for the personal holding company tax hinges solely on one issue-- whether Lupowitz was properly charged with accrued interest income in connection with advances made by it to Penn Wynn in the years in question
 
 
 [2]
 Sidney died on July 20, 1960. On January 4, 1962, Lupowitz and Penn Wynn each redeemed all of its own stock held by Sidney's estate
 Emanuel died on December 8, 1963. His widow Esther Lupowitz inherited his stock in Lupowitz and Penn Wynn. Esther subsequently remarried and is the Esther (Lupowitz) Meisler, who is appellee in Appeal No. 73-1590. After Emanuel's death, the officers and directors of both corporations were the same, i.e., Harold, Martha and Esther.
 
 
 [3]
 The $575,000 was transferred from Lupowitz to Penn Wynn during the period February 24, 1959 through August 8, 1960. Penn Wynn's only transfer of funds to Lupowitz during this period was on May 4, 1960 when it transferred $7,000. These transfers were entered in the respective ledgers of Lupowitz and Penn Wynn under accounts titled 'Exchange'
 
 
 [4]
 It was common practice to transfer monies as needed between Lupowitz family-owned enterprises
 
 
 [5]
 In 1964 the definition of personal holding company income in 26 U.S.C. 543 was amended as follows:
 '543, Personal holding company income.
 (a) General rule.-- For purposes of this subtitle, the term 'personal holding company income' means the portion of the adjusted ordinary gross income which consists of:
 (2) Rents.-- The adjusted income from rents; except that such adjusted income shall not be included if--
 (A) such adjusted income constitutes 50 percent or more of the adjusted ordinary gross income, and
 (B) the sum of--
 (i) the dividends paid during the taxable year (determined under section 562),
 (ii) the dividends considered as paid on the last day of the taxable year under section 563(c) (as limited by the second sentence of section 563(b)), and
 (iii) the consent dividends for the taxable year (determined under section 565), equals or exceeds the amount, if any, by which the personal holding company income for the taxable year (computed without regard to this paragraph and paragraph (6), and computed by including as personal holding company income copyright royalties and the adjusted income from mineral, oil, and gas royalties) exceeds 10 percent of the ordinary gross income.'
 
 
 [6]
 'During the taxable years in issue, the outstanding balance of the advances from Lupowitz to Penn Wynn was a debt of Penn Wynn owing to Lupowitz, upon which interest at 5% Was due and payable.'
 
 
 [7]
 The Fifth Circuit in Tyler v. Tomlinson, 414 F.2d 844 (1969) adopted a 'factor analysisc approach paralleling the analysis in Fin Hay supra
 
 
 [8]
 We are mindful that in Fin Hay we concluded that 'The various factors which have been identified in the cases are only aids in answering the ultimate question whether the investment, analyzed in terms of its economic reality, constitutes risk capital entirely subject to the fortunes of the corporate venture or represents a strict debtor/creditor relationship.' 398 F.2d at 697. We adhere to this precept in the instant case. We have utilized the Fin Hay criteria as aids only and not as per se rules
 
 
 [9]
 Although the Tax Court attributed substantial weight to Lupowitz's consent to the assessment of interest and the manner it recorded these entries on its books of account, we are not persuaded that these actions should control the nature of the transactions as loans, particularly in view of our overall evaluation respecting the Fin Hay guidelines
 
 
 [10]
 The significance of a thin capital structure was stressed in Tyler v. Tomlinson, supra at 848
 'We have been careful to note that 'thin capitalization' is 'very strong evidence' of a capital contribution where: '(1) the debt to equity ratio was high to start with, (2) the parties understood that it would likely go higher, and (3) substantial portions of these funds were used for the purchase of capital assets and for meeting expenses needed to commence operations.' United States v. Henderson, 5 Cir. 1967, 375 F.2d 36 at 40. Thin capitalization is also of significance where combined with 'subordination to other indebtedness.' Rowan v. United States, supra, 219 F.2d 51 at 55.'
 10A In Fin Hay a reclassification of debt to equity was approved by this Court where the ratio approximated 10 to 1.
 
 
 [11]
 Judge Van Dusen, who dissented in Fin Hay, authored the majority opinion in Trans-Atlantic
 
 
 [12]
 In Appeal No. 73-1589, Sophie Lupowitz is a party to the action solely by reason of having filed a joint return with her husband, Harold Lupowitz
 As previously noted, Esther Meisler is the widow of Emanuel Lupowitz and inherited all of his stock. See footnote 2.
 
 
 [13]
 Originally, the Commissioner asserted that both Harold Lupowitz and Esther Meisler had constructive dividend income. However, on these appeals, he now takes the position that the Tax Court's determination that there were no constructive dividends is correct. He seeks reversal only if we reverse the Tax Court on Appeal No. 73-1588, asserting that all the Lupowitz family controlled corporate transfers must be treated the same. (Commissioner's brief pp. 39 and 42). Two considerations compel use to reject this proposition. (1) The 'true' nature and economic reality of each transaction must be examined. A per se rule such as the Commissioner propounds was rejected by this Court in Fin Hay. See also Trans-Atlantic during trial. His attorney stated to not identical to that in No. 73-1588. Here the controlling factor is whether there are constructive dividends attributable to taxpayers
 
 
 [14]
 The Commissioner originally determined that Harold Lupowitz and Esther Meisler each received constructive dividends in the amount of $8,000. The Tax Court assumed that the Commissioner arrived at the amount of the alleged constructive dividends from: (a) the fact that the net transfer of funds from Mansfield to Lupowitz in 1965 amounted to $24,000, and (b) the fact that Harold Lupowitz and Esther Meisler each owned approximately one-third of the stock of Lupowitz. In fact, the Commissioner's determination was based on the erroneous understanding that Harold and Esther each owned one-third of Mansfield's stock. (Commissioner's brief p. 38). As the Commissioner has now recognized, each of the taxpayers owned 50% Of the Mansfield stock. The 'constructive dividend' doctrine requires reference to the transferring corporation and not to the transferee. Hence, it is Harold and Esther's stock ownership in Mansfield not Lupowitz that is relevant with respect to this issue. Inasmuch as we affirm the Tax Court's judgments in both appeals, we need not concern ourselves further with the erroneous original computation by the Commissioner