WILLIAM B. DEAN and ELIZABETH DEAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dean v. Commissioner
Docket No. 6784-72
United States Tax Court
T.C. Memo 1974-236; 1974 Tax Ct. Memo LEXIS 83; 33 T.C.M. (CCH) 1041; T.C.M. (RIA) 74236; September 12, 1974, Filed. *83 Petitioners held a one-third interest in a partnership. This partnership was formed to purchase a tract of unimproved real estate. Several years later a portion of this property was sold by the partnership to an unrelated third party.Held: The partnership was formed for investment purposes and this purpose has remained constant throughout the partnership's existence, giving rise to capital gain on the sale of a portion of the partnership property. Felix Atwood, for the petitioners. Arthur B. Bleecher, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined a deficiency in petitioners' federal income tax for the taxable year 1968 in the amount of $46,633.57. The issue in controversy is whether a sale of 133.111 acres of land to Federated Department *84 Stores, Inc., in February, 1968, by a joint venture known as Meadow Brook Farm, in which petitioner William B. Dean held a one-third interest, resulted in the realization of ordinary income or capital gain. To settle this issue we must determine whether the land in question was held by the joint venture primarily for sale to customers in the ordinary course of its business, or was held for investment purposes. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated by this reference. Petitioners, William B. Dean (hereinafter petitioner) and Elizabeth Dean, are husband and wife residing in Dallas County, Texas, at the time of the filing of their petition herein. Petitioners filed a joint federal individual income tax return with the district director of internal revenue at Dallas, Texas, for the calendar year 1968. In July, 1962 the petitioner, and two brothers, Vernon S. Smith and James W. Smith, formed a joint venture known as Meadow Brook Farm (hereinafter the joint venture or the partnership). The terms of the partnership were oral with each partner having a one-third *85 interest. The partnership was the result of a long standing friendship between the petitioner and the Smith Brothers. The petitioner, a medical doctor, knew the Smiths had long been involved in real estate development. On several occasions the petitioner had advised the Smiths that he would be interested in joining with them in the purchase of some real estate for investment purposes when they found property suitable for that purpose. Such property was finally found, as described below, and the partnership was formed. Soon after formation the partnership on July 9, 1962, purchased a tract of land consisting of 319.088 acres in Dallas County, Texas (hereinafter the Boedeker tract). [1] The purchase price was $747,355 or approximately $2,500 per net acre. The Boedeker tract was used by the partnership for farming and to raise cattle and quarter horses. Two years later, in 1964, the joint venture learned that the State of Texas planned to construct a controlled access highway facility across the Boedeker tract and intended to condemn *86 approximately 82 acres of such land. The sale of this property which was threatened to be condemned was actually finalized by a deed from the partners to the State of Texas dated July 8, 1969. Upon learning of the proposed highway, the partnership moved in two directions. First it sought to purchase additional land to replace that which was to be taken by the state. In December, 1966, the partnership purchased a tract consisting of 73.54 acres of land from Mrs. Leola Daniel and others. [2] This tract adjoined the original Boedeker tract and cost $3,500 per net acre. The partnership had also acquired an additional adjoining tract of 30.615 acres of land from Ethel Dealey Jones and Samuel J. Dealey. This tract, however, had not been purchased for replacement purposes. The partnership was fairly certain that the new highway would come through in the general area of its property, and it was believed this tract would enhance the value of the other adjoining tracts already owned. *87 The second action taken by the partnership was to initiate a request to rezone the land from agricultural use to a higher and better use. Toward this end Robert W. Hollin, a municipal planning consultant, was employed by the partnership to handle the zoning request before the City Planning Commission of Dallas (hereinafter Planning Commission). Hollin made a study of the area, considering the various characteristics of the land, to develop a plan which would best utilize the land. After many discussions with James and Vernon Smith a request was presented to the Planning Commission. A series of six drawings and much negotiation with the Planning Commission were needed before the request was approved. Finally on June 21, 1965, the proper ordinances were passed by the Dallas City Council to rezone parts of the land from agricultural use to cluster housing, multiple housing, residential and general retail uses. Despite the request for zoning change there is no requirement that actual development in compliance with the zoning request be undertaken. Aside from participation in the initial steps, the petitioner was not involved in the development or presentation of the zoning request. *88 The amount paid to Hollin for his services was approximately $6,100, whereas the amount needed to develop the land was estimated to cost at least $500,000. Approximately a year after the zoning requests were enacted, representatives of Federated Department Stores, Inc. (hereinafter Federated) contacted Vernon Smith to arrange a meeting. At this meeting the Federated representatives revealed a plan to construct a large shopping center in Dallas County. They had, unbeknownst to the partnership, conducted an extensive survey of the area and, due to the location of the proposed highway and an existing highway, thought that a part of the Boedeker tract would be most suitable for their plan. The purpose of the meeting then was to propose a purchase of a portion of the partnership property (hereinafter Federated tract)., Subsequently on October 25, 1966, an option was granted by the partnership to Federated to purchase approximately 157 acres [3] in the northeast section of the Boedeker tract for $10,000 per acre. Under the terms of the option agreement and the subsequent contract of sale, the partnership agreed to use its best efforts to have some improvements made to the land [4] and *89 to initiate a rezoning request to permit the construction of a shopping center. To fulfill its zoning commitment the partnership, joined by Federated representatives, initiated the request before the Planning Commission. This request was presented to the Planning Commission in January, 1967 and the necessary zoning ordinance was adopted by the Dallas City Council in February, 1967. *90 The sale was finalized in February, 1968 and the gain recognized was reported by the partnership on its 1968 federal partnership tax return as long term capital gain in the amount of $637,994.96. Petitioner however reported $257,664.99 as his distributive share of this partnership gain as long term capital gain on his joint federal income tax return for 1968. [5] Respondent in his deficiency notice to petitioners explained his determination of deficiencies as follows: 1. It is determined that the Meadowbrook Farm [sic] partnership is a dealer in real estate; therefore, land sales are ordinary income from sales of inventory and not capital gain from sales of capital assets. Accordingly, petitioner's distributive share of the partnership's ordinary income was increased to reflect the disallowance of the capital gain. *91 After the sale of the Federated tract, the partnership undertook to have another study made of its remaining property. The partnership wished to obtain the highest and best use for its property in view of the recent developments and to set a pattern for the land in the general area. A comprehensive study was made and a plan was presented to the Planning Commission to rezone the land for residential and commercial uses. Vernon Smith sponsored the adoption of the plan, and approval was granted by the Planning Commission in September, 1968, and the appropriate zoning ordinance was passed by the Dallas City Council in March, 1969. The previously described condemnation sale was the last sales activity with respect to partnership property. Since acquisition the partnership property has been used for farming operations, and at the time of trial the remaining property was leased to a farmer. The partnership has never developed the land and has made no improvements other than those required by the sale of the Federated tract. Neither the partnership nor any individual partner has solicited a sale, advertised the property for sale, or placed a "For Sale" sign on any of the properties. *92 OPINION The case at bar presents for our determination the sole issue of whether real property owned by the partnership, in which the petitioner held a one-third interest, was held "primarily for sale to customers in the ordinary course of his trade or business" within the meaning of section 1221(1), I.R.C. 1954, with the result that gain upon its sale is to be treated as ordinary income rather than capital gain. Reviewing the basic facts briefly, the partnership was formed in 1962 to purchase an unimproved piece of real property. Two years later the partnership learned that an interstate highway was being planned for construction either across or in the general vicinity of its property. Upon gaining this information, the partnership successfully rezoned part of its land from agricultural use to residential and general commercial use. The partnership also purchased two additional adjoining pieces of property. In 1966 the partnership received an unsolicited offer to sell a portion of its property to Federated. This offer was accepted and the sale ultimately occurred in 1968. Under the sales contract, the partnership was obligated to see that various *93 improvements were made to property and to initiate a zoning request to permit the construction of a shopping center. After the sale to Federated, the partnership had the property rezoned in accordance with plans that were made that reflected the recent developments respecting its property, and in 1969 a portion of the property was sold to the State of Texas under condemnation proceedings for highway use. To resolve the issue at bar, we must first sift through the record to determine the total factual pattern of this case. Reducing this effort to a more workable structure, a number of factors have been established as particularly relevant to this determination, see United States v. Winthrop, 417 F.2d 905, 909-910 (5th Cir. 1969); William B. Howell, 57 T.C. 546, 554 (1972); Maddux Construction Co., 54 T.C. 1278, 1284 (1970), though no single factor standing alone is determinative. Kelley v. Commissioner, 281 F.2d 527, 528 (9th Cir. 1960), affirming a Memorandum Opinion of this Court; *94 W. T. Thrift, Sr., 15 T.C. 366, 369 (1950). After settling on the factual determinations, we must then apply them to the relevant statute, Winthrop, supra at 910. Section 1221, I.R.C. 1954, defines the term "capital asset" as being all property (with five statutory exceptions) held by the taxpayer. The first statutory exception as found in I.R.C. sec. 1221(1) excludes from the definition of property: (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *. The purpose of this exception as stated by the Supreme Court's opinion in Malat v. Riddell, 383 U.S. 569, 572 (1966), is to differentiate between gain derived from the everyday operations of a business and gain derived from assets that have appreciated in value over a substantial period of time. The Court went on to hold that, as used in section 1221(1), "primarily" means "of first importance" or "principally," *95 Malat, supra at 572. This statutory exception had also been clarified in Dunlap v. Oldham Lumber Co., 178 F.2d 781, 785 (5th Cir. 1950) when the Court noted that the property must not only have been "held primarily for sale," but also for sale in the "ordinary course of business." See also Winthrop, supra at 911 and William B. Howell, supra at 555. In addition we are aware that the capital gains provisions, which are an exception to the normal tax rates, are to be construed narrowly, Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52 (1955), and that the burden of proof is on the petitioner, S. O. Bynum, 46 T.C. 295, 298 (1966). Respondent's position that the sale of the Federated tract produced ordinary income is based mainly on his view of the significance of the zoning activities engaged in by the partnership. Respondent's view is that the time and expense expended by the partnership in this activity, under the direction of two of its partners (James and Vernon Smith), clearly indicates the partnership's intent to hold the land for sale in the ordinary course of its business. Petitioner, on *96 the other hand, contends the partnership was formed for investment purposes, and this purpose remained constant throughout the history of the partnership. We agree with petitioner. To support our opinion, we must necessarily rely heavily on the factual pattern of this case. [6] When this partnership was formed, each partner received a one-third interest reflecting his equal contributions of cash. Vernon Smith testified that he and his brother were aware of the petitioner's limited capabilities in the area of real estate development, and they certainly did not intend to contribute the additional personal effort needed to develop the property to which the petitioner could not equally contribute. We are impressed by this statement as establishing the original intention of the partnership to hold the Boedeker tract for investment purposes. Upon learning of the proposed highway, the partnership did act to have the property rezoned in contemplation of a possible condemnation *97 proceeding with the state. Respondent asserts that this respresents a visible indication of the partnership's true intent to hold the property for sale to customers in ordinary course of its business. He points to the extensive discussions between the Smiths and Hollin, the planning consultant, the series of drawings made depicting a coordinated plan for development that was presented to the Planning Commission for approval, the negotiations with the Planning Commission, and the $6,100 fee paid to Hollin for his services. We, however, find these activities to be those of prudent businessmen designed to protect their investment and maximize its appreciation. See Morris Cohen, 39 T.C. 886, 892 (1963). The negotiations and plans were needed to provide the Planning Commission with some basis on which to approve the rezoning request. See Morris Cohen, supra at 892. The partnership did pay $6,100 to Hollin, but this sum becomes insignificant in relation to the uncontested estimate by Vernon Smith that at least $500,000 would be needed to develop the property. In 1966, 4 years after the original purchase, the partnership received an unsolicited offer from *98 Federated to purchase a portion of the Boedeker tract for $10,000 per acre. This value represents a 400 percent increase over the original purchase price. In view of the guideline established by the Supreme Court in Malat, supra at 572, we find this gain to be derived from the appreciation in value of the land accrued over a substantial period of time. Federated had made its own extensive survey of the area and concluded that a portion of the Boedeker tract was the most suitable for its proposed shopping center. Its conclusion was primarily based on the accessability the Federated tract would have as a result of the intersection of the new and existing highways. In addition, since Federated planned to construct a shopping center, the partnership's recent zoning activity should not have influenced Federated's offer since the land, as zoned in 1966, would not permit the construction of a shopping center. After the sale of the Federated tract was completed, the partnership undertook to have its remaining property rezoned under a new plan for residential and general retail uses. In support of the plan, Vernon Smith related to the Planning Commission the history of the *99 property while being held by the partnership.In this statement, Smith did indicate an original intention to develop the property that was cut short by the encroachment of the highway and the sale to Federated. As a result of these developments its plans had to be reevaluated, and this zoning request was an effort at a new development program. Respondent strenuously urges that these admissions provide a tangible evidence of the partnership's original intent, or a least show that by the time of the Federated sale the partnership's intent had materially changed. Since the respondent is using hindsight to support his position, it seems fair to make reference to other factors provided to us through the luxury of hindsight. Despite the statement and plans presented to the Planning Commission, the partnership has not developed the property. No improvements have been made to the property other than those required by the terms of the sale to Federated. Respondent's own witness, Hollin, corroborated the testimony of Vernon Smith that there is no legal requirement to actually develop the property in accordance with the zoning application. In addition, at no time did the partnership, *100 or any of its partners acting for the partnership, solicit or advertise any portion of the property for sale, nor was a "For Sale" sign ever placed on the property. Since acquisition the property has been used for farming operations and at the time of trial, the remaining property was being farmed by a tenant. At the trial Vernon Smith also stated several reasons for the last zoning request. Adjoining property was being developed and they wished to have their plans approved before new residents could become potential objectors. Also they hoped that their plans would set a pattern for the area to make it more difficult for adjoining land to be zoned for undesirable uses that would depress the value of the remaining partnership property. Certainly this property was acquired for the ultimate purpose of resale, hopefully at a profit; however upon consideration of the entire record we do not believe the partnership ever intended to hold its property for sale to customers in the ordinary course of a real estate business. Consequently we find as an ultimate fact that this partnership was formed for investment purposes and this purpose remained constant throughout its existence. In *101 view of this finding, the gain produced by the sale of the Federated tract is held to have resulted in the realization of capital gain. In his brief, respondent has cited for our consideration, Juleo, Inc. v. Commissioner, 483 F.2d 47 (3rd Cir. 1973), reversing and remanding a Memorandum Opinion of this Court, certiorari denied 414 U.S. 1103 (1973). Donald J. Lawrie, 36 T.C. 1117 (1961); and Herzog Bldg. Corp., 44 T.C. 694 (1965). These cases deal with the question of a changed business purpose for holding the property that was sold. In view of our ultimate finding of fact that the partnership's intent has remained constant, we believe these cases are not relevant to the issue at hand. Decision will be entered under Rule 155. Footnotes
1. Judging from the deed of conveyance the reference in the stipulation of facts to a tract containing 319.188 is a typographical error. ↩
2. The single acquisition actually took the form of two separate purchases. The Daniel family wished to make a contribution to its church, the First Christian Church of Duncanville. With the prior agreement of the partnership, the Daniels conveyed 3 acres of land to the church and the partnership purchased 70.54 acres from the Daniel family directly and 3 acres from the church. We also note in the agreement of sale that Mrs. Leola Daniel had the right to live in the existing home located on the land for the remainder of her life. ↩
3. The actual contract of sale called for a transfer of 133.111 acres of land. ↩
4. In the option agreement the partnership agreed to use its best efforts with the City of Dallas to assure that the property would be served with adequate storm sewers, and that the existing Camp Wisdom Road on the north border would be improved to handle the expected increased traffic. In the contract of sale the partnership agreed to dedicate some land to the City of Dallas for use as right of ways for access to the property. One of these right of ways was to be paved and the contract called for the partnership and Federated to share this expense according to prescribed ratios. The partnership also paid for the acquisition of a right of way over land it did not own to entice the City of Dallas to include the Camp Wisdom Road improvement project in a bond issue. This right of way was not acquired until 1972 and the paving improvement was just being completed at the time of the trial. ↩
5. Petitioner's distributive share of this capital gain as originally reported on the partnership tax return was $212,664.99. The additional $45,000 results from a disallowance by respondent of the paving costs provided for in the negotiations between the partnership and Federated. These contemplated costs were used by the partnership to offset the gross sales price of the Federated tract. This offset was disallowed due to their contingent nature, and is not in issue in this action. ↩
6. In his brief, respondent concedes the applicability of Hyman Podell, 55 T.C. 429↩ (1970) that it is the intent of the partnership that is determinative and not the intent of any specific partner.