JACOB FREIDUS AND CLAIRE BRITT, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Freidus v. Commissioner
Docket Nos. 4317-63; 4319-63; 4320-63; 1205-68; 1206-68; 1207-68.
United States Tax Court
T.C. Memo 1979-507; 1979 Tax Ct. Memo LEXIS 18; 39 T.C.M. (CCH) 740; T.C.M. (RIA) 79507; December 19, 1979, Filed MarshallPerlin, for petitioner Claire Britt. Rufus H. Leonard, Jr., for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: There cases were assigned to and heard by Special Trial Judge James M. Gussis pursuant to Rules 180 through 185, Tax Court Rules of Practices and Procedure. His report was filed on May 4, 1979, and subsequently both parties filed exceptions to his report. The exceptions have been considered and, where appropriate, some amendments have been made to the report. The Court agrees with and adopts the report, as modified, set forth below. OPINION OF SPECIAL TRIAL *19 JUDGE GUSSIS, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Income Tax
Docket No.
Petitioners
Year
Deficiency
4317-63
Jacob Freidus &
1949
$40,710.02
Claire Britt
1950
32,696.38
4319-63
Jacob Freidus
1951
66,052.86
1952
67,562.65
1953
83,302.53
4320-63
Claire Britt
1951
31,307.08
1952
64,325.47
1953
134,010.71
1205-68
Jacob Freidus &
1954
91,398.36
Claire Britt
1955
59,040.64
1956
76,246.15
1958
42,517.17
1959
24,908.79
1960
21,391.77
1206-68
Jacob Freidus
1957
46,567.25
1207-68
Claire Britt
1957
62,977.61
Respondent, in amendments to his answers filed in these cases, determined the following increases in income tax deficiencies under alternative positions: Income Tax
Deficiency
Alternative
Alternative
Docket No.
Petitioners
Year
No. 1
No. 2
4317-63
Jacob Freidus &
1949
$161,551.96
$204,062.79
Claire Britt
1950
242,957.50
365,028.94
4319-63
Jacob Freidus
1951
79,825.80
94,963.07
1952
4,229.02
35,875.18
1953
12,773.43
23,982.18
4320-63
Claire Britt
1951
$ 51,655.35
$ 65,065.73
1952
11,002.30
29,933.06
1953
15,380.12
40,133.11
1205-68
Jacob Freidus &
1954
100,740.12
192,367.19
Claire Britt
1955
127,035.63
164,688.52
1956
144,503.99
197,072.28
1958
87,436.27
148,061.57
1959
57,301.27
46,123.35
1960
43,028.30
60,743.35
1206-68
Jacob Freidus
1957
71,296.03
128,089.47
1207-68
Claire Britt
1957
72,981.15
82,171.43
*20 The principal issue in these consolidated cases is whether and to what extent the petitioners realized constructive dividends in the years involved as a result of transfers of funds to and from various entities. Respondent's alternative arguments, which vary the amounts to be treated as constructive dividends to the petitioners, turn upon whether one of the entities involved, Pacific Management Corp., is a valid corporation which must be recognized for income tax purposes. FINDINGS OF FACT Some of the facts were stipulated and they are so found. Jacob Freidus and Claire Freidus (now Claire Britt) [2] filed joint Federal income tax returns for the years 1949, 1950, 1954, 1955, 1956, 1958, 1959 and 1960 with the District Director in Brooklyn, New York. Jacob Freidus filed individual Federal income tax returns for the years 1951, 1952, 1953 and 1957 with the District Director in Brooklyn, New York. Claire Freidus filed individual Federal income tax returns for the years 1951, 1952, 1953, and 1957 with the District Director in Brooklyn, New York. Jacob Freidus and Claire Freidus were residents of Grant Neck, New York at the time the petitions in these cases were filed. *21 Jacob Freidus was convicted and sentenced in the District Court for the Southern District of New York on an indictment charging income tax evasion for the years 1942 and 1943. The judgment was affirmed in United States v. Aaron,190 F.2d 144 (2nd Cir. 1951). In December 1951 respondent made jeopardy assessments against Jacob Freidus and Claire Freidus covering deficiencies in income tax, additions to tax and interest for the years 1941 through 1948 in excess of $2,000,000. Becky Aaron is the mother of Jacob Freidus. Becky and her husband Samuel were stockholders or partners of a majority of the business entities here involved. Florence Thaler and Hatalie Filler are daughters of Samuel E. and Becky Aaron. William Feigenbaum is the father of Claire Freidus. Aaron Machinery Co., Inc. was incorporated in the state of New York in February 1946 and during the years 1949 through 1960 was in the business of selling new and used machinery. From April 30, 1948 to September 10, 1951 the outstanding stock was held by Jacob Freidus (25 percent), Claire Freidus (25 percent), Samuel E. Aaron (25 percent) and Becky Aaron (25 percent). From September 10, 1951 to November 30, 1960 the *22 stock was held by Jacob Freidus (22 1/2 percent), Claire Freidus (22 1/2 percent), Samuel E. Aaron (22 1/2 percent), Becky Aaron (22 1/2 percent) and Joseph Feigenbaum (10 percent). Able Engineering Co. was a partnership formed in the state of New York on February 1, 1940 and from 1949 through 1959 was in the business of providing machinery engineering services and machinery sales. Jacob Freidus and Claire Freidus each owned a one-half interest in the partnership from 1949 through 1960. All American Machinery Corp. was incorporated in the state of New York on November 8, 1951 and during the years 1951 through 1960 was in the business of importing machinery and selling it as a jobber. The outstanding stock was held by Jacob Freidus (22 1/2 percent), Claire Freidus (22 1/2 percent), Samuel E. Aaron (22 1/2 percent), Becky Aaron (22 1/2 percent) and Joseph Feigenbaum (10 percent). Canal Machinery Co., a partnership formed in the state of New York in August 1942, was in the business of buying and selling new and used machinery during the years 1949 through 1953. During the period 1949 through 1953 Florence Thaler, Hatalie Filler and William Feigenbaum each owned a one-third *23 interest in the partnership. Caprice Imports Inc. was incorporated in the state of New York in April 1955 and during the years 1955 through 1960 was in the business of importing Italian shoes and selling them at wholesale. Jacob Freidus owned all of the outstanding stock of the corporation from 1955 through 1961. Challis Inc. was incorporated in the state of Florida on July 31, 1947 and became inactive on December 31, 1952. The corporation held a leasehold on real estate in Florida and was in the business of renting this real estate to individual tenants from 1949 to July 1950. Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation from 1949 through 1952. Chelsea Hotel Corp., incorporated in the state of New Jersey on April 29, 1946, was owner and operator of a hotel in Atlantic City, New Jersey from May 1, 1948 to April 30, 1958. From May 1, 1948 to December 31, 1950 the outstanding stock was held by Jacob Freidus (25 percent), Claire Freidus (25 percent), Joseph Kaufman (25 percent), and Zelda Kaufman (25 percent). From 1951 through 1958 the outstanding stock was held by 601 West 26 Corp. (50 percent), Joseph *24 Kaufman (25 percent) and Zelda Kaufman (25 percent). Chelsea Television Center, Inc. was incorporated in the state of New York on August 29, 1949 and from September 1, 1949 through August 31, 1953 was engaged in the retail business of selling televisions and home appliances. During this period Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation. Drake Associates, Inc. was incorporated in the state of Florida on August 30, 1948 and was liquidated on December 15, 1950. During its existence the corporation owned and operated an apartment house in Miami Beach, Florida. Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation. Drake Construction Corp. was incorporated in the state of New York on January 6, 1947 and was engaged in the construction and sale of single-family residences during the year prior to 1949. The corporation distributed its assets to its stockholders during the year 1948. From January 6, 1947 to December 31, 1949 the outstanding stock of the corporation was held by the Jacob Freidus and Claire Freidus partnership (80 percent) and Oscar Ehrlick (20 percent). Claire *25 Freidus and Becky Aaron was a partnership formed in the state of New York on October 1, 1941 and was engaged in the business of owning and operating rental properties during the years 1949 through 1958. The partnership became inactive in 1959. Claire Freidus and Becky Aaron each held a one-half interest in the partnership.
Jacob Freidus and Samuel E. Aarons was a partnership formed in the state of New York in November 1943. The partnership owned and operated rental properties in New York and was also in the business of buying and selling marketable securities during the years 1949 through 1960. During this period Jacob Freidus and Samuel E. Aarons each held a one-half interest in the partnership. Jacob Freidus and Claire Freidus was a partnership formed in the state of New York on March 2, 1946. The partnership owned and operated numerous rental properties in New York and other locations, held investments in hotel properties in Florida and New Jersey and also held an,/ pecent interest in Drake Construction Corp. Jacob Freidus and Claire Freidus each held a one-half interest in the partnership from 1949 through 1960. Miami Beach Holding Corp. was incorporated in the state *26 of Florida on June 25, 1945 and was engaged in subletting the Lux Tower Hotel in Miami Beach during the years 1949 through 1956. During this period the outstanding stock of the corporation was held by the Jacob Freidus and Claire Freidus partnership (50 percent) and Joseph Kaufman (50 percent). Miami Beach Tower Hotel Inc. was incorporated in the state of Florida on October 28, 1954. The corporation operated the Lux Tower Hotel under a lease from October 28, 1954 to September 30, 1956. Jacob Freidus held all of the outstanding stock of the corporation. Pacific Management Corp. was incorporated in the state of New York in January 1947. From 1949 through 1960 the outstanding stock of the corporation was held by Jacob Freidus (25 percent), Claire Freidus (25 percent), Samuel E. Aaron (25 percent) and Becky Aaron (25 percent). Reserve Realty Corp. was incorporated in the state of New York on June 7, 1946 and during part of the year 1946 owned and operated rental property in the Bronx, New York. The rental property was sold in 1946 and the corporation reported the gain realized on the sale on the installment basis. In a partial liquidation on April 1949 the corporation distributed *27 to its stockholders the balance due on the sale of the rental property.From 1949 through 1955 the outstanding stock of the corporation was held by the Jacob Freidus and Claire Freidus partnership (75 percente, Joseph Krefitz (12 1/2 percent), and Fred Beleger (12 1/2 percent). Southern Wood Industries, Inc. as incorporated in the state of Florida in September 1944 and during the years 1949 through 1960 was engaged in the business of manufacturing kitchen cabinets. From March 1955 through 1960 Jacob Freidus owned 80 percent of the outstanding stock of the corporation. Starrett Television Corp. was the successor (via a name change as of November 28, 1950) to General Television Corp., incorporated in the state of New York on March 2, 1948. During the years 1949 through 1955 the Starrett Television Corp. and its predecessor were in the business of manufacturing television sets and cabinets and were also engaged in the experimental development of various electronic devices. During the years 1949 to May 1, 1950 the outstanding stock of the corporation was held by Jacob Freidub (25 1/2 percent), Claire Freidus (25 1/2 percent) and Murray Daniels (49 percent). From May 1, 1950 through *28 April 30, 1955 Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation. Stephen Sales Co., Inc., incorporated in the state of New York in December 1940, owned and leased real estate in New York, New York during the years 1949 through 1959. From January 1, 1949 through November 30, 1960 Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation. Techniflix Corp. was incorporated in the state of New York on February 26, 1948. The corporation was in the business of manufacturing flexible metal hose under a contract assigned to it by Aaron Machinery Co., Inc. In the years 1949 and 1950 all of the outstanding stock in the corporation was held by the Jacob Freidus and Claire Freidus partnership; from January 1, 1951 through April 1955 all of the outstanding stock was held by Aaron Machinery Co., Inc; and from April 1955 through 1960 all of the outstanding stock was held by 601 West 26 Corp. Flexpansion Corp. was incorporated in the State of New Jersey on February 17, 1941. Flexpansion became an inactive corporation on December 31, 1947 and remained inactive during the taxable years *29 at issue. The stock ownership was held equally by Jacob Freidus and Claire Freidus when Flexpansion was an active corporation. Oliver Sales Corp. was incorporated in the State of New York on January 29, 1941. The Oliver Sales Corp. has issued no capital stock and has been an inactive corporation since it was organized. Trunk Corp., incorporated in the state of Florida on March 29, 1946, owned parking lots and unimproved real estate in Florida during the years 1949 through 1955. Jacob Freidus and Samuel E. Aaron each owned 50 percent of the stock in the corporation from January 1, 1949 to June 30, 1950. From June 30, 1950 through the year 1960 all of the outstanding stock of the corporation was owned by 601 West 26 Corp. Waterway Corp., incorporated in the state of Florida on June 24, 1947, became inactive in 1949. Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation during the year 1949. The 138 Corp. was incorporated in the state of New York on December 17, 1945 and during the years 1949 and 1950 owned and operated an office building in New York City. The corporation transferred its assets to its stockholders *30 in a liquidation on January 11, 1951. Jacob Freidus and Samuel E. Aaron each owned 50 percent of the outstanding stock in the corporation from January 1, 1949 to the date of liquidation. The 335 Corp. was incorporated in the state of New York on November 30, 1945. Prior to the year 1949 the corporation owned residential properties in New York City. The corporation was liquidated in 1950. Jacob Freidus and Samuel E. Aaron each owned 50 percent of the outstanding stock of the corporation in the years 1949 and 1950. The 384 Corp., incorporated in the state of New York on December 17, 1945, owned industrial real estate in Port Jarvis, New York. The corporation was liquidated in the year 1951. From 1949 to 1951 Jacob Freidus and Claire Freidus Each held 50 percent of the outstanding stock of the corporation. The 396 Corp. was incorporated in the state of New York on November 30, 1945 and from 1949 through 1960 owned an office building in New Yoirk City. Jacob Freidus and Samuel E. Aaron each held 50 percent of the outstanding stock of the corporation during this period. The 487 Corp., incorporated in the state of New York on July 5, 1946, acted as nominee on secured loans made *31 for 601 West 26 Corp. during the years 1949 through 1952. The corporation became inactive after 1952. Jacob Freidus and Samuel E. Aarons each held 50 percent of the oustanding stock of the corporation from 1949 through 1960. The 521 Corp., incorporated in the state of New York on July 5, 1946, sublet real estate in the Bronx (New York) which the corporation held under a long-term lease during the years 1950 and 1951. The corporation was liquidated in 1951. Jacob Freidus and Claire Freidus each owned 50 percent of the outstanding stock of the corporation from 1949 to 1951. The 583 Corp., incorporated in the state of New York on November 30, 1945, owned and operated a building in New York City during the years 1949 through 1960 and also owned unimproved real estate in Long Beach, New York. During this period Claire Freidus and Becky Aaron each owned 50 percent of the outstanding stock of the corporation. The 601 West 26 Corp. was the successor corporation to Starrett Realty Renting Co., Inc. (incorporated in New York in 1946) by a corporate name change on October 2, 1950. The corporation owned one of the largest storage warehouses located in Manhattan *32 (New York) in the years 1949 through 1960. During this period the warehouse building was operated under the supervision of independent management agents. From 1949 to May 25, 1955 the outstanding stock of the corporation was held by Jacob Freidus (25 percent), Claire Fridus (25 percent), Samuel E. Aaron (25 percent) and Becky Aaron (25 percent).From May 25, 1955 to December 1, 1960 the outstanding stock was held by Jacob Freidus (22.32 percent), Claire Freidus (22.32 percent), Samuel E. Aaron (21.43 percent), Becky Aaron (23.22 percent) and Aaron Machinery Co., Inc. (10.71 percent). From December 1, to December 31, 1960 the outstanding stock was held by Jacob Freidus (24.53 percent), Claire Freidus (25.47 percent), Samuel E. Aaron (23.60 percent) and Becky Aaron (26.40 percent). The 631 Corp. was incorporated in the state of New York on July 5, 1946. The corporation owned and operated rental property from November 28, 1948 to April 28, 1950 at which time the rental property was sold. From 1948 through the year 1957 Jacob Freidus and Samuel E. Aaron each owned 50 percent of the outstanding stock of the corporation. The 678 Corp. was incorporated in the state of New York on *33 July 5, 1946 and operated rental property under a leasehold in Long Island City, New York. The corporation was liquidated in 1951. From 1949 to 1951 Claire Freidus and Becky Aaron each owned 50 percent of the outstanding stock in the corporation. The 718 Corp. was incorporated in the state of New York on November 30, 1945 and during the year 1949 owned and operated two buildings in New York City. The corporation sold one of these buildings in 1949 and then distributed all of its assets to the stockholders in liquidation. Claire Freidus and Becky Aaron each owned 50 percent of the outstanding stock of the corporation during the year 1949 prior to the liquidation. The 857 Corp., incorporated in the state of New York on June 5, 1946, held a contract to purchase real estate in New York City. The corporation distributed its assets to stockholders in liquidation on May 10, 1948. Prior to the liquidation Jacob Freidus and Samuel E. Aaron each owned 50 percent of the outstanding stock of the corporation. The 876 Corp. was incorporated in the state of New York on July 5, 1946 and operated a building held under a leasehold in New York City during the years 1949 through 1951. The corporation *34 distributed a portion of its assets to stockholders in 1950 and distributed its remaining assets in complete liquidation in 1951. From 1949 until the liquidation in 1951 the outstanding stock of the corporation was owned by Jacob Freidus (50 percent) and Claire Freidus (50 percent). The 987 Corp. was incorporated in the state of New York on July 5, 1946 and owned and operated a building in New York City until its sale during the corporation's fiscal year ended June 5, 1949. The corporation became inactive on June 30, 1950. From July 1, 1948 to June 30, 1950 Jacob Freidus and Clarie Freidus each owned 50 percent of the outstanding stock in the corporation. The 2827 Corp., was incorporated in the state of New York on November 30, 1945 and owned a building in Philadelphia, Pa. from December 1, 1945 to May 21, 1948 when a contract of sale was entered into. The corporation distributed its assets to stockholders in liquidation on April 30, 1948 prior to the sale of the building. Prior to the liquidation Jacob Freidus and Clarie Freidus each held 50 percent of the outstanding stock of the corporation. The 7173 Corp. was incorporated in the state of New York on November 30, 1945 and *35 owned two parcels of real estate, one of which was sold in 1946. In December 1948 the corporation distributed its assets in liquidation to its stockholders.Prior to the liquidation Clarie Freidus and Becky Aaron each owned 50 percent of the outstanding stock of the corporation. The 7980 Corp. was incorporated in the state of New York on November 30, 1945 and owned unimproved real estate during the years 1949 and 1950. The real estate was sold during the year 1950 and on November 28, 1950 the corporation distributed its assets in liquidation to stockholders. Prior to the liquidation Claire Freidus and Becky Aaron each held 50 percent of the outstanding stock of the corporation. During the year 1949 through 1960 funds were regularly transferred between Pacific Management Corp. and approximately 60 entities and individuals. These transfers were recorded in the books of account of Pacific Management Corp. The total amount of the net transfer of funds during this period from Pacific Management Corp. to the various entities and individuals is as follows: Year
Net Amount Transferred
1949
$1,057,258.79
1950
1,646,603.50
1951
501,459.00
1952
556,973.70
1953
402,754.44
1954
913,339.38
1955
619,537.62
1956
549,763.13
1957
643,366.08
1958
401,728.02
1959
216,227.99
1960
210,560.61
$7,719,572.26
*36 The net amount of the transferred funds from Pacific Management Corp. received by Jacob Freidus during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$57,829.72
1951
23,632.50
1952
6,183.75
1953
69.00
1954
2,401.07
1955
25,854.71
1956
4,092.17
1959
22,160.47
1960
6,383.74
The net amount of the transferred funds from Pacific Managment Corp. received by Clarie Freidus during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$72,516.38
1950
49,793.08
1951
46,331.82
1952
19,986.09
1953
1,998.76
1954
13,039.91
1960
13,258.52
The net amount of the transferred funds from Pacific Management Corp. received by Becky Aaron during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$ 24,432.12
1950
24,715.34
1951
16,755.39
1952
140,177.56
1953
236.89
1954
6,740.99
1955
3,865.94
1956
1,347.12
1958
338.50
The net amount of the transferred funds from Pacific Management Corp. received by Samuel E. Aaron during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$ 37,795.29
1950
18,522.11
1951
129,760.37
1952
3,574.87
1953
69.00
1954
3,066.91
1955
3,476.43
1956
1,057.15
1958
486.06
1959
1,859.38
*37 The net amount of the transferred funds from Pacific Management Corp. received by Aaron Machinery Co., Inc. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$264,584.71
1952
33,946.37
1953
329,055.85
1954
789,149.04
1955
471,731.66
1956
345,601.21
1957
327,490.62
1958
394,083.16
1959
179,601.29
1960
189,180.00
The net amount of the transferred funds from Pacific Management Corp. received by Able Engineering Co. during the taxable years in issue was as follows: Year
Net Amount Transferred
1952
$629.56
1953
97.00
1954
123.50
1955
125.38
1956
66.50
The net amount of the transferred funds from Pacific Management Corp. received by All American Machinery Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1951
$ 61,135.00
1952
243,092.00
1953
14,236.89
1954$298,710.39
1955
82,003.38
1956
144,934.19
1957
275,436.00
The net amount of the transferred funds from Pacific Management Corp. received by Canal Machinery Co. during the taxable years in issue was as follows: Year
Net Amount Transferred
1952
$203.45
1953
84.37
*38 The net amount of the transferred fund from Pacific Management Corp. received by Caprice Imports, Inc. during the taxable years in issue was as follows: Yeat
Net Amount Transferred
1955
$22,838.61
1957
33,269.30
1958
6,365.00
1960
285.00
The net amount of the transferred funds from Pacific Management Corp. received by Challis Inc. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$3,210.76
1950
2,290.80
1952
10.00
1953
10.00
1954
10.00
The net amount of the transferred funds from Pacific Management Corp. received by Chelsea Hotel Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$39,581.98
1950
14,445.67
The net amount of the transferred funds from Pacific Management Corp. received by Chelsea Television Center Inc. in 1953 was $14. The net amount of the transferred funds from Pacific Management Corp. received by Drake Associates Inc. in 1950 was $102,159.70. The net amount of the transferred funds from Pacific Management Corp. received by Drake Construction Corp. in 1950 was $18,711.22. The net amount of the transferred fund from *39 Pacific Management Corp. received by the Claire Freidus and Becky Aaron partnership during the taxable years in issue was as follows: Year
Net Amount Transferred
1953
$1,625.65
1956
63.00
1958
2.00
The net amount of the transferred funds from Pacific Management Corp. received by the Jacob Freidus and Samuel E. Aaron partnership during the taxable years in issue was as follows: Year
Net Amount Transferred
1952
$20,484,14
1953
10,791.95
1954
7,608.15
1955
8,550.94
1956
3,543.19
1957
2,251.12
1959
45.00
The net amount of the transferred funds from Pacific Management Corp. received by the Jacob Freidus and Clarie Freidus partnership during the taxable years in issue was as follows: Year
Net Amount Transferred
1951
$17,055.86
1953
22,696.41
1954
10,142.99
1956
6,567.99
The net amount of the transferred funds from Pacific Management Corp. received by Longbe Corp. in 1949 was $10. The net amount of the transferred funds from Pacific Management Corp. received by Lehigh Television Corp. in 1951 and 1956 was $25 and $120.50, respectively. The net amount of the transferred funds from Pacific Management Corp. *40 received by Miami Beach Holding Corp. in 1953 was $174.25. The net amount of the transferred funds from Pacific Management Corp. received by Miami Beach Tower Hotel Inc. in 1954 and 1956 was $40,960.03 and $1,799.07, respectively. The net amount of the transferred funds from Pacific Management Corp. received by Reserve Realty Corp. in each of the years 1952, 1953 and 1956 was $10. The net amount of the transferred funds from Pacific Management Corp. received by Starrett Realty Renting Co. during the taxable years in issue was as follows: Year
Net Amount Transferred
1953 $ 8.50
1956
60.80
1957
2,090.94
1958
443.30
1959
1,076.52
1960
847.14
The net amount of the transferred funds from Pacific Management Corp. received by Starrett Television Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949 $ 262,785.00
1950
1,028,950.00
1951
39,000.00
1952
80,611.85
1955
13.50
The net amount of the transferred funds from Pacific Management Corp. received by Stephen Sales Co. Inc. during the taxable years in issue was as follows: Year
Net Amount Transferred
1952 $ 165.00
1953
291.38
1954
856.29
1955
1,067.07
1956
547.89
*41 The net amount of the transferred funds from Pacific Management Corp. received by Southern Wood Industries Inc. in 1956 was $25,647.33. The net amount of the transferred funds from Pacific Management Corp. received by Techniflex Corp. in the taxable years 1949 and 1950 was $71,953.58 and $295,750, respectively. The net amount of the transferred funds from Pacific Management Corp. received by Trunk Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$22,542.15
1950
2,029.21
1951
8,665.98
1952
207.50
1956
1,449.00
The net amount of the transferred funds from Pacific Management Corp. received by Waterway Corp. in the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$21.25
1950
10.00
1951
10.00
1952
10.00
1953
10.00
The net amount of the transferred funds from Pacific Management Corp. received by the 138 Corp. in the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$99,651.65
1950
11,860.37
1951
28,707.53
1952
215.88
1953
10.00
The net amount of the transferred funds from Pacific Management Corp. received by the *42 185 Corp. in each of the taxable years 1949 and 1951 was $10. The net amount of the transferred funds from Pacific Management Corp. received by the 335 Corp. in the taxable years 1949 and 1951 was $41,933.93 and $657.64, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 369 Corp. in the taxable year 1949 was $10. The net amount of the transferred funds from Pacific Management Corp. received by the 384 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949 $ 186.93
1950
4,789.65
1951
4,831.19
1952
10.00
The net amount of the transferred funds from Pacific Management Corp. received by the 396 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$16,435.56
1951
54,087.84
1953
17,741.98
1956
12,846.02
1959
11,485.33
The net amount of the transferred funds from Pacific Management Corp. received by the 487 Corp. in the taxable years 1949 and 1950 was $17,680 and $39,317, respectively. The net amount of the transferred funds from the Pacific Management Corp. recieved by the 521 Corp. in the taxable years 1950 *43 and 1951 was $15,923.08 and $26,453.76, respecitvely. The net amount of the transferred funds from Pacific Management Corp. received by the 583 Corp. during the taxable years 1953, 1954, 1957, and 1960 was $3,522.56, $9,530.11, $2,818.10 and $606.21, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 631 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$4,174.76
1950
3,398.88
1951
5,823.54
1952
10.00
1956
10.00
1957
10.00
1958
10.00
The net amount of the transferred funds from Pacific Management Corp. received by the 678 Corp. in the taxable years 1951, 1952 and 1955 was $22,025.45, $1,318.34 and $10, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 718 Corp. in the taxable years 1949, 1950 and 1951 and $18,701.34, $410.33 and $417.22, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 857 Corp. in each of the taxable years 1949, 1950 and 1951 was $10. The net amount of the transferred funds from Pacific Management Corp. received by the 876 Corp. in the taxable *44 years 1951 and 1952 was $6,468.64 and $2,301.24, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 890 Corp. in the taxable year 1949 was $10. The net amount of the transferred funds from Pacific Management Corp. received by the 917 Corp. in each of the taxable years 1949 and 1951 was $10. The net amount of the transferred funds from Pacific Management Corp. received by the 2827 Corp. in the taxable years 1949, 1950, 1951 and 1952 was $10, $12,010, $9,010 and $3,816.10, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 7173 Corp, in the taxable years 1949, 1950 and 1951 was $650.45, $1,507.06 and $10, respectively. The net amount of the transferred funds from Pacific Management Corp. received by the 7980 Corp. in the taxable years 1949, 1951 and 1952 was $521.23, $524.27 and $10, respectively. The total amount of the net transfer of funds to Pacific Management Corp. from the various entities and individuals during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$1,088,523.30
1950
2,011,857.63
1951
518,635.88
1952
600,474.37
1953
403,228,57
1954
933,435.78
1955
654,637.37
1956
575,276.26
1957
656,359.99
1958
422,213.45
1959
233,390.71
1960
230,944.07
$8,328,977.38
*45 The net amount of transferred funds to Pacific Management Corp. from Jacob Freidus in the taxable years 1950, 1957 and 1958 was $78,338.57, $9,266.66 and $166.03, respectively. The net amount of transferred funds to Pacific Management Corp. from Claire Freidus in the taxable years 1955 through 1959 was $98,109.44, $2,756.14, $27,651.59, $4,496.79 and $10,875.80, respectively. The net amount of transferred funds to Pacific Management Corp. from Becky Aaron in the taxable years 1957, 1959 and 1960 was $9,261, $2,153.84 and $1,455.13, respectively. The net amount of transferred funds to Pacific Management Corp. from Samuel E. Aaron in the taxable year 1957 was $4,705.50. The net amount of transferred funds to Pacific Management Corp. from Aaron Machinery Co., Inc. in the taxable years 1950 and 1951 was $224,000 and $125,014.79, respectively. The net amount of transferred funds to Pacific Management Corp. from Canal Machinery Co. in the taxable year 1954 was $1,076.08.The net amount of transferred funds to Pacific Management Corp. from Caprice Imports Inc. in the taxable year 1956 was $15,785. The net amount of transferred funds to Pacific Management Corp. from Chelsea Hotel Corp. *46 in the taxable years 1958 and 1959 was $9,000 and $2,250, respectively. The net amount of transferred funds to Pacific Management Corp. from Drake Association Inc. in the taxable years 1949 and 1951 was $50,705.82 and $38,074.36, respectively. The net amount of transferred funds to Pacific Management Corp. from Drake Construction Corp. in the taxable year 1949 was $11,428.64.
The net amount of transferred funds to Pacific Management Corp. from the Claire Freidus and Becky Aaron partnership during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$272,243.25
1950
179,915.36
1951
62,201.51
1952
21,870.37
1954
10,125.63
1955
400.26
The net amount of transferred funds to Pacific Management Corp. from the Jacob Freidus and Samuel E. Aaron partnership during the taxable years is issue was as follows: Year
Net Amount Transferred
1949
$ 57,771.32
1950
110,393.29
1951
21,353.31
1958
577.96
The net amount of transferred funds to Pacific Management Corp. from the Jacob Freidus and Claire Freidus partnership during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$230,521.51
1950
112,113.03
1952
10,882.97
1955
25,862.11
1957
15,920.04
1958
1,073.60
1959
7,479.79
1960
10,740.01
*47 The net amount of transferred funds to Pacific Management Corp. from Flexpansion Corp. in the taxable year 1952 was $45.93. The net amount of transferred funds to Pacific Management Corp. from Miami Beach Tower Hotel Inc. in the taxable years 1955 and 1957 was $1,878.68 and $63.78, respectively. The net amount of transferred funds to Pacific Management Corp. from Oliver Sales Corp. in the taxable year 1950 was $10. The net amount of transferred funds to Pacific Management Corp. from Starrett Realty Renting Co. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$12,444.06
1950
51,246.86
1951
7,421.93
1952
2,201.75
1954
1,100.45
1955
121.25
The net amount of transferred funds to Pacific Management Corp. from Starrett Television Corp. in the taxable year 1954 was $150. The net amount of transferred funds to Pacific Management Corp. from Stephen Sales Co., Inc. in the taxable year 1959 was $21,500. The net amount of transferred funds to Pacific Management Corp. from Southern Wood Industries, Inc. in the taxable year 1955 was $20,150. The net amount of transferred funds to Pacific Management Corp. from the Trunk *48 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1953
$23,902.25
1954$2,183.22
1955
12,712.75
1957
900.00
1958
600.00
1959
450.00
The net amount of transferred funds to Pacific Management Corp. from 335 Corp. in the taxable year 1950 was $22.68. The net amount of transferred funds to Pacific Management Corp. from the 487 Corp. in the taxable years 1951 and 1952 was $64,975 and $708.54, respectively. The net amount of transferred funds to Pacific Management Corp. from the 521 Corp. in the taxable years 1949 and 1952 was $33,179 and $1,118.27, respectively. The net amount of transferred funds to Pacific Management Corp. from the 396 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1950
$ 79,816.52
1952
31,580.45
1954
37,773.49
1955
32,006.94
1957
110,705.00
1958
37,976.00
1960
5,480.00
The net amount of transferred funds to Pacific Management Corp. from the 583 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$22,908.43
1950
13,855.67
1951
415.67
1952
2,301.48
1955
40,083.46
1956
6,583.94
1958
5.06
1959
13,505.31
*49 The net amount of transferred funds to Pacific Management Corp. from the 601 West 26 Corp. during the taxable years in issue was as follows: Year
Net Amount Transferred
1949
$291,804.65
1950
982,864.97
1951
198,612.88
1952
529,764.61
1953
379,326.32
1954
880,039.28
1955
423,312.48
1956
550,151.18
1957
477,886.42
1958
368,318.01
1959
175,175.97
1960
213,268.93
$5,470,525,70
The net amount of transferred funds to Pacific Management Corp. from the 678 Corp. in the taxable years 1949, 1950 and 1954 was $33,199.99, $17,947.14 and $987.63, respectively. The net amount of transferred funds to Pacific Management Corp. from the 876 Corp. in the taxable years 1949 and 1950 was $28,911.58 and $104,600.30, respectively. The net amount of transferred funds to Pacific Management Corp. from the 987 Corp. in the taxable years 1949 and 1950 was $43,405.05 and $2,789.26, respectively.The net amount of transferred funds to Pacific Management Corp. from the 7980 Corp. in the taxable year 1950 was $53,943.88. We find the earnings and profits of the various entities during the period here involved to be as shown on joint exhibits 71-TTT *50 and 72-bbb. The net income of the 601 West 26 Corp. (joint exhibit 71-TTT) for the taxable years 1949 through 1960 was as follows: Year
Net income
1949
$177,933.17
1950
115,238.80
1951
104,038.56
1952
225,864.84
1953
364,552.33
1954
229,478.24
1955
220,605.95
1956
448,740.91
1957
613,477.33
1958
143,538.81
1959
268,678.19
1960
176,838.61
The following table shows the total net amount of funds transferred during each of the years 1949 through 1960 from 601 Weat 26 Corp. to Pacific Management Corp., the amounts of ordinary dividends and liquidating distributions for each of the years in issue, and the allocation of ordinarydividends to the stockholders of 601 West 26 Corp. based upon their stock ownership in that corporation during the years in issue: Net Amount
Liquidating
Ordinary
Year
Transferred
Distribution
Dividend
1949
$291,804.65
$113,871.48
177,933.17
1950
982,864.97
867,626.17
115,238.80
1951
198,612.88
94,574.32
104,038.56
1952
529,764.61
303,899.77
225,864.84
1953
379,326.32
14,773.99
364,552.33
1954
880,039.28
650,561.04
229,478.24
1955
423,312.48
202,706.53
220.605.95
1956
550,151.18
101,410.27
448,740.91
1957
477,886.42
477,886.42
1958
368,318.01
89,188.29
279,129.72
1959
175,175.97
175,175.97
1960
213,268.93
213,268.93
*51 Jacob
Claire
Year
Freidus
Freidus
Other
1949
$ 44,483.30
$ 44,483.29
$ 88,966.58
1950
28,809.70
28,809.70
57,619.40
1951
26,009.64
26,009.64
52,019.28
1952
56,446.21
56,446.21
112,932.42
1953
91,138.09
91,138.09
182,276.16
1954
57,369.56
57.369.56
114,739.12
1955
55,151.49
55,151.49
110,302.97
1956
112,185.23
112,185.23
224.370.45
1957
119,471.61
119,471.61
238,943.20
1958
69,782.43
69,782.43
139,564.86
1959
43,794.00
43,793.99
87,597.98
1960
53,317.24
53,317.23
106,634.46
The following table shows the allocation of the liquidatingdistributions (as indicated in the above table) to the stockholders of 601 West 26 Corp. based upon their stock ownership in that corporation during the years in issue: Liquidating
Jacob
Claire
Years
Distributions
Freidus
Freidus
Other
1949
$113,871.48
$ 28,467.87
$ 28,467.87 56,935.74
1950
867,626.17
216,906.55
216,906.54
433,813.08
1951
94,574.32
23,643.58
23,643.58
47,287.16
1952
303,899.77
75,974.95
75,974,94
151,949.88
1953
14,773.99
3,693.50
3,693.50
7,386.99
1954
650,561.04
162,640.26
162,640.26
325,280.52
1955
202,706.53
50,676.64
50,676953
101,353.26
1956
101,410.27
25,352.57
25,352.57
50,705.13
1957
1958
89,188.29
22,297.08
22,297.07
44,594.14
1959
1960
*52 The following table shows the total net amount of funds transferred during each of the taxable yers 1949 through 1960 from Pacific Management Corp. to he various individuals and entities, the amounts of ordinary dividends and liquidating distributions for each of the years in issue, and the allocations of ordinarydividends to the stockholders of Pacific Management Corp., based upon their stock ownership in that corporation during the years in issue: Net Amount
Liquidating
Ordinary
Year
Transferred
Distribution
Dividend
1949
$1,057,258.79
$1,055,190.23
$2,068.56
1950
1,646,603.50
1,645,385.41
1,218.09
1951
501,459.00
501,142.87
316.13
1952
556,973.70
551,368.24
5,605.46
1953
402,754.44
397,152.07
5,602.37
1954
913,339.38
913,339.38
1955
619,537.62
619,537.62
1956
549,763.13
549,763.13
1957
643,366.08
643,366.08
1958
401,728.02
401,728.02
1959
216,227.99
216,227.99
1960
210,560.61
210,560.61
Jacob
Claire
Year
Freidus
Freidus
Other
1949 $ 536.18 $ 564.84 $ 967.54
1950
287.00
324.18
606.51
1951
59.90
74.17
182.06
1952
1,036.12
1,174.98
3,394.36
1953
1,393.34
1,420.14
2,788.89
1954
1955
1956
1957
1958
1959
1960
*53 The following table shows the allocation of the liquidatingdistributions (as indicated in the above table) to the stockholders of Pacific Management Corp. based upon their stock ownership in that corporation during the years in issue: Liquidating
Jacob
Claire
Year
Distributions
Freidus
Freidus
Other
1949
$1,055,190.23
$273,465.02
$288,122.89
$493,602.32
1950
1,645,385.41
388,105.98
437,862.21
819,417.22
1951
501,142.87
94,817.47
117,502.47
288,822.93
1952
551,368.24
101,910.60
115,573.99
333,883.65
1953
397,152.07
98,770.95
100,673.84
197,707.28
1954
913,339.38
224,423.72
235,062.55
453,853.11
1955
619,537.62
172,439.88
146,585.16
300,512.58
1956
549,763.13
139,908.89
135,816.69
274,037.55
1957
643,366.08
190,841.54
160,841.54
321,683.00
1958
401,728.02
100,225.87
100,225.87
201,276.28
1959
216,227.99
70,212.52
48,052.03
97,963.44
1960
210,560.61
54,113.34
60,988.11
95,459.16
Based upon the total net amount of funds transferred from the various entities to Pacific Management Corp. during the taxable years in issue, the following table shows the ordinary dividend and liquidating *54 distributions allocable to Jacob Friedus and Claire Freidus based upon their respective stock ownership in the said entities: Net Amount
Jacob Freidus
Year
Entity
Transferred
Liq. Dis. Ord. Div.
1950
Aaron Machinery
$224,000.00
$46,860.39
$ 9,139.61
1951
Company
125,014.79
1,778.40
29,475.30
1956
Caprice Imports
15,785.00
15,203.74
581.26
Inc.
1951
Challis Inc.
566.43
283.22
1958
Chelsea Hotel
9,000.00
4,500.00
1959
Corp.
2,250.00
1,125.00
1949
Drake Associates
50,705.82
25,352.91
1951
Inc.
38,074.36
19,037.18
1949
Drake Construction
11,428.64
5,714.32
Corp.
1952
Flexpansion Corp.
45.93
22.96
1955
Miami Beach Tower
1,878.68
1,878.68
1957
Hotel Inc.
63.78
63.78
1950
Oliver Sales Corp.
10.00
10.00
Claire Freidus
Year
Entity
Liq. Dis. Ord. Div.
1950
Aaron Machinery
$46,860.38
$ 9,139.62
1951
Company
1,778.40
29,475.30
1956
Caprice Imports
Inc.
1951
Challis Inc.
283.21
1958
Chelsea Hotel
4,500.00
1959
Corp.
1,125.00
1949
Drake Associates
25,352.91
1951
Inc.
19,037.18
1949
Drake Construction
5,714.32
Corp.
1952
Flexpansion Dorp.
22.97
1955
Miami Beach Tower
1957
Hotel Inc.
1950
Oliver Sales Corp.
*55 Net Amount
Jacob Freidus
Year
Entity
Transferred
Liq. Dis. Ord. Div.
1954
Starrett Television $ 150.00 $ 75.00 $
Corp.
1959
Stephen Sales Co.
21,500.00
Inc.
1955
Southern Wood
20,150.00
4,016.91
16,133.09
Industries, Inc.
1953
Trunk Corp.
23,902.25
9,904.64
2,046.49
1954
2,183.22
847.33
244.28
1955
12,712.75
6,356.37
1957
900.00
450.00
1958
600.00
300.00
1959
450.00
225.00
1950
335 Corp.
22.68
11.34
1950
396 Corp.
79,816.52
7,078.59
32,829.67
1952
31,580.45
7,949.57
7,840.66
1954
37,773.49
18,886.74
1955
32,006.94
16,003.47
1957
110,705.00
55,352.50
1958
37,976.00
18,988.00
1960
5,480.00
2,740.00
1951
487 Corp.
64,975.00
32,487.50
1952
708.54
354.27
1949
521 Corp.
33,179.00
16,589.50
1952
1,118,27
559.14
1949
583 Corp.
$ 22,908.43 $ $
1950
13,855.67
1951
415.67
1952
2,301.48
1955
40,083.46
1956
6,583.94
1958
5.06
1959
13,505.31
1949
678 Corp.
33,199.99
1950
17,947.14
1954
987.63
1949
876 Corp.
28,911.58
14,455.79
1950
104,600.30
27,405.35
24,894.80
1949
987 Corp.
43,405.05
21,702.52
1950
2,789,26
1,394.63
1950
1980 Corp.
53,943.88
*56 Claire Freidus
Year
Entity
Liq. Dis. Ord. Div.
1954
Starrett Television $ 75.00 $
Corp.
1959
Stephen Sales Co.
19.51
10,730.50
Inc.
1955
Southern Wood
Industries, Inc.
1953
Trunk Corp.
1954
1955
1957
1958
1959
1950
335 Corp.
1950
396 Corp.
1952
1954
1955
1957
1958
1960
1951
487 Corp.
1952
1949
521 Corp.
16,589.50
1952
559.13
1949
583 Corp. $
$11,454.22
1950
6,927.83
1951
207.83
1952
1,150.74
1955
20,041.73
1956
3,291.97
1958
2.53
1959
2,664.68
4,087.98
1949
678 Corp.
11,223.70
5,376.30
1950
8,973.57
1954
493.81
1949
876 Corp.
14,455.79
1950
27,405.34
24,894.81
1949
987 Corp.
21,702.53
1950
1,394.63
1950
7980 Corp.
14,114.99
12,856.95
The liquidating distributions to Jacob Freidus resulting from the fund transfers during the years in issue, after reduction for paid-in capital and other capital investment in the above-enumerated entities making fund transfers, were as follows: Paid-in capital
Taxable
Total
&
Liquidating
Entity
Liq.Dis.
cap. investment
Distribution
1949
Drake Assoc. 25,352.91 $ 250.00
$ 25,102.91
Inc.
Drake Constr.
5,714.32
5,714.32
Corp.
521 Corp.
16,589.50
1,000.00
15,589.50 601 West 26
28,467.87
500.00
27,967.87
Corp.
876 Corp.
14,455.79
1,000.00
13,455.79
987 Corp.
21,702.53
100.00
21,602.53
1950
Aaron Mach.
46,860.39
46,860.39
Co. Inc.
Oliver Sales
2.50
2.50
Corp.
396 Corp.
7,078.59
4,608.89
2,469.70 601 West 26
216,906.55
216,906.55
Corp.
876 Corp.
27,405.35
27,405.35
887 Corp.
1,394.63
1,394.63
1951
Aaron Mach.
1,778.40
1,778.40
co. Inc.
Challis, Inc.
283.22
283.22
Drake Assoc.
19,037.18
187.03
18,850.15
Inc.
487 Corp.
32,487.50
14,349.27
18,138.23 601 West 26
23,643.58
23,643.58
Corp.
1952
Flexpansion $ 22.97 $ $ 22.97
Corp.
396 Corp.
7,949.57
7,949.57
487 Corp.
354.27
354.27
521 Corp.
559.14
559.14 601 West 26
75,974.95
75,947.95
Corp.
1953
Trunk Corp.
9,904.64
9,361.25
543.39 601 West 26
3,693.50
3,693.50
Corp.
1954
Starrett
75.00
75.00
Television
Corp.
Trunk Corp.
847.34
847.34 601 West 26
162,640.26
162,640.26
Corp.
1955
Miami Beach
1,878.68
1,878.68
Tower Hotel
Inc.
Southern Wood
4,016.91
4,016.91
Industries
Trunk Corp.
6,356.38
6,356.38 601 West 26
50,676.64
50,676.64
Corp.
1956
Caprice Imports
15,203.74
7,109.66
8,094.08
Inc. 601 West 26
25,352.57
25,352.57
Corp.
1957
Miami Beach $ 63,78 $ 63.78 $
Tower Hotel
Inc.
Trunk Corp.
450.00
450.00
1958
Chelsea Hotel
4,500.00
4,500.00
Corp.
Trunk Corp.
300.00
300.00 601 West 26
22,297.08
22,297.08
Corp.
1959
Chelsea Hotel
1,125.00
1,125.00
Corp.
Trunk Corp.
225.00
225.00
*57 The liquidating distributions to Claire Freidus resulting from the fund transfers during the years in issue, after reduction for paid-in capital and other capital investment in the above-enumerated entities, were as follows: Paid-in capital
Taxable
Total
&
Liquidating
Entity
Liq.Dis.
cap. investment
Distribution
1949
Drake Assoc.
$25,352.91 $ 250.00
$25,102.91
Inc.
Drake Constr.
5,714.32
5,714.32
Corp.
521 Corp.
16,589.50
1,000.00
15,589.50 601 West 26
$ 28,467.87 $ 500.00
$ 27,967.87
Corp.
678 Corp.
11,223.69
11,223.69
876 Corp.
14,455.79
1,000.00
13,455.79
987 Corp.
21,702.52
100.00
21,602.52
1950
Aaron Mach. Co.
46,860.38
46,860.38
Inc.
Oliver Sales
2.50
2.50
Corp. 601 West 26
216,906.54
216,906.54
Corp.
876 Corp.
27,405.34
27,405.34
987 Corp.
1,394.63
1,394.63
7980 Corp.
14,114.99
630.31
13,484.68
1951
Aaron Mach. Co.
1,778.40
1,778.40
Inc.
Challis Inc.
283.21
283.21
Drake Assoc. Inc.
19,037.18
187.01
18,850.17 601 West 26
23,643.58
23,643.58
Corp.
1952
Flexpansion
22.96
22.96
Corp.
521 Corp.
559.13
559.13 601 West 26
75,974.94
75,974.94
Corp.
1953 601 West 26
3,693.50
3,693.50
Corp.
1954
Starrett $ 75.00 $ 75.00 $
Television
Corp. 601 West 26
162,640.26
162,640.26
Corp.
1955 601 West 26
50,676.63
50,676.63
Corp.
1956 601 West 26
25,352.57
25,352.57
Corp.
1958
Chelsea Hotel
4,500.00
4,500.00
Corp. 601 West 26
22,297.07
22,297.07
Corp.
1959
Chelsea Hotel
1,125.00
1,125.00
Corp.
Stephen Sales
19.51
19.51
Co. Inc.
583 Corp.
2,664.68
2,664.68
*58 The total ordinary dividends and taxable liquidating distributions received by Jacob Freidus attributable to the net transfers of funds described above during each of the years in issue were as follows: Year
Ordinary Dividends
Taxable Liq. Dis.
1949
$ 45,019.48
$382,847.94
1950
95,972.52
636,284.71
1951
55,544.84
155,449.43
1952
65,342.99
178,821.93
1953
94,577.92
103,007.84
1954
76,500.58
387,911.32
1955
87,288.05
229,472.90
1956
112,766.49
173,355.54
1957
174,824.11
161,291.54
1958
88,770.43
122,822.95
1959
43,794.00
70,437.52
1960
56,057.24
54,113.34
The total ordinary dividends and taxable liquidating distributions received by Claire Freidus attributable to the net transfers of funds described above during each of the years in issue were as follows: Year
Ordinary Dividends
Taxable Liq. Dis.
1949
$ 61,878.65
$397,505.80
1950
91,926.66
669,563.10
1951
55,766.94
159,996.22
1952
58,791.93
192,131.02
1953
92,558.22
104,367.34
1954
57,863.37
397,702.81
1955
75,193.22
197,261.79
1956
115,477.20
161,169.26
1957
119,471.61
190,841.54
1958
69,784.96
122,522.94
1959
58,612.47
48,052.03
1960
53,317.23
60,988.11
*59 Opinion
At the start of the trial in these cases petitioner Jacob Freidus represented to the Court that he did not intend to contest the issues raised by the respondent in the statutory notices of deficiency. He further indicated to he Court that, while he did not concede any of the issues raised by respondent in the amended answers with respect to which issues respondent has the burden of proof, he nonetheless did not intend to participate inthe trial. Petitioner Jacob Freidus did not in fact participate in the ensuing trial. Moreover, petitioner Claire Freidus presented no evidence with respect to any of the issues raised by respondent in his statutory notices for the years here involved. Petitioners, of course, have the burden of proving that respondent's determinations are erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. In the complete absence of any evidence presented by petitioner Claire Freidus on such issues and in view of petitioner Jacob Freidus' failure to contest any of the determinations *60 made by respondent in the statutory notices, we must hold for the respondent in the statutory notices, we must hold for the respondent with respect to such determinations in each of the years here involved. The remaining issue is whether and to what extent the petitioners realized constructive dividends and distributions in the years 1949 through 1960 as a consequence of transfers of funds among numerous entities in which petitioners held varying interests. [3]Respondent raised this issue by amendment to his answers filed in these cases and hence, with respect to said issue, respondent has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.[4]
*61 Respondent contends that the petitioners devised a scheme covering the span of years here involved to utilize the substantial earnings generated by the profitable entities controlled by them in a manner that enabled them to avoid the effect of sizeable tax liens which had been filed against them and to circumvent an escrow agreement entered into with the Internal Revenue Service with respect to their income tax deficiencies for the years 1941 through 1948 and which screened the transferred funds from the normal incidents of taxation. It is respondent's contention that the amounts transferred in this manner resulted in constructive dividends to petitioners (or constructive returns of capital) based upon their ownership interests in the entities involved. Respondent initially made alternative determinations for each of the years here involved turning upon whether Pacific Management Corp. should be recognized as a valid corporate entity for purposes of taxation. The record shows that the continuous flow of funds among the numerous entities involved was funneled through this corporation in which petitioners each held a 25 percent stock interest with the remaining stock interest *62 held by Becky Aaron (Jacob Freidus' mother) and Becky's husband Samuel E. Aaron. Pacific Management Corp. kept books and records throughout this period, filed corporation income tax returns and reported income apparently derived from management activities. New York State Franchise Taxes were duly paid. While we recognize, of course, the role the corporation played in managing the flow of funds among the various entities we do not believe that this alone would render the corporation a sham or unreal. We do not believe that, on these facts, we can disregard the existence of Pacific Management Corp.Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Petitioner and other closely related individuals controlled most of the entities here involved. It is readily apparent that petitioners devised a plan to siphon earningsfrom some of the more profitable entities of this closely-knit group to other entities with the purpose of providing start-up capital and other needed funds with which to carry on operations. For example, a single entity in the group, 601 West 26 Corp., made net transfers of funds to Pacific Management Corp. during the years *63 in issue in excess of $5,000,000. The 601 West 26 Corp. owned one of the largest warehouses in New York City during this period. The warehouse was operated throughout the years involved under the supervision of independent management agents and was able to generate substantial earnings. These funds together with other earnings transferred to Pacific Management Corp. were then siphoned off to meet the needs of the other entities in this controlled group.Substantial amounts were also funneled by Pacific Management Corp. to petitioners individually or to partnerships in which they held interests. One such entity benefitting from these infusions of funds was Starrett Television Corp., a manufacturer of television sets and cabinets, which obtained net transfers from Pacific Management Corp. during this period in excess of $1,400,000. Another entity benefitting from infusion of capital from Pacific Management Corp. was the All American Machinery Corp., an importer and jobber of machinery, which obtained net transfers during the years involved of about $850,000. During the years in issue Pacific Management Corp. made net transfers to Jacob Freidus and Claire Freidus in *64 the approximate amounts of $148,600 and $216,900, respectively. This pattern of fund transfer was continued throughout the years 1949 through 1960, with some 60 entities within this related group obtaining needed funds in varying amounts. In all, some $7,700,000 was distributed by Pacific Management Corp. to or for the use of the various entities, partnerships and individuals during the years in issue. The entities involved were engaged insuch business operations as owning and operating hotels and other real estate, various manufacturing operations, importing Italian shoes, building and selling houses and other diverse activities which had no conceivable business nexus with Pacific Management Corp.
For tax purposes, a dividend does not have to be formally declared as such by a corporation, Barbourville Brick Co. v. Commissioner, 37 T.C. 7 (1961). Funds transferred between related corporations primarily for the benefit of the stockholders can result in constructive dividends to the common stockholders of such entities. McLemore v. Commissioner, T.C. Memo. 1973-59, *65 affd. per curiam 494 F.2d 1350 (6th Cir. 1974); Sammons v. United States, 433 F.2d 728 (5th Cir. 1970); Schwartz v. Commissioner, 69 T.C. 877 (1978). The absence of a valid business purpose for the transfer can support the conclusion that there was a constructive distribution. Joseph Lupowitz Sons, Inc. v. Commissioner, 497 F.2d 862 (3rd Cir. 1974), affg. on this issue T.C. Memo 1972-238. Similarly, corporate distributions to or for the direct benefit of the stockholders may likewise warrant treatment as taxable dividends or distributions. See Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650 (1962). It suffices that a transfer causes funds to leave the control of the transferor corporation and allows the stockholders to exercise control over such funds through some instrumentality other than the transferor. Kuper v. Commissioner, 533 F.2d 152 (5th Cir. 1976). It is immaterial for the purpose of determining the existence of constructive dividends that the transferred funds do not pass through the hands of the taxpayer. Sammons v. United States, supra; *66 Rushing v. Commissioner, 52 T.C. 888 (1969), affd. on other issues 441 F.2d 593 (5th Cir. 1971). Here, the elaborate plan devised by petitioners to use the earnings generated by their more profitable entities to provide funds for themselves in their individual capacities and for the entities in which petitioners held interests clearly supports a conclusion that such transferred funds resulted in taxable distributions to the petitioners. Petitioners directly benefitted from such transfers. No corporate purpose is discernible that would impel such transfers of funds to the other entities in this group, and this is especially true when we consider the widely disparate business activities of these entities. [5] Nor is there any indication that these transfers of funds over a span of some 12 years were intended as bona fide loans.There is no indication of the payment or accrual of interest by the recipients of the funds; the transfers were not documented by notes or by any assignments of security; there is no significant evidence of any existing plan or method of repayment of these advances; nor is there any indication that the financial ability of the transferee *67 entities to repay the funds was ever considered. See Berthold v. Commissioner, 404 F.2d 119 (6th Cir. 1968); Pierce v. Commissioner, 61 T.C. 424 (1974); Litton Business Systems, Inc. v. Commissioner, 61 T.C. 367 (1973); and Roschuni v. Commissioner, 29 T.C. 1193 (1958), affirmed per curiam 271 F.2d 267 (5th Cir. 1959). No single factor is determinative. Instead, we have examined all of the facts and circumstances against the backdrop of this unique pattern of events lasting for years to determine the intent of the parties. We conclude, on the basis of the entire record, that no intention ever existed to consider these transfers as bona fide loans. *68 Section 316, Internal Revenue Code of 1954 limits the term "dividend" to distributions by a corporation out of its earnings and profits. Any corporate distribution to or for the direct benefit of its stockholders in excess of earnings and profits is considered to be a return of capital and taxable as a capital gain to the extent that such corporate distributions is in excess of basis. See sections 1001, 1011 and 1012, Internal Revenue Code of 1954. These principles are reflected in the schedules which appear in our findings of fact. The transfers of funds to the various corporate entities have been reflected as advances to the capital of said corporations by the petitioner-stockholders, with appropriate adjustments made in the basis of the petitioners' stock ownership in such corporations. We must conclude on the basis of this entire record that the transfers of funds over a span of some 12 years as described in our findings represented constructive distributions taxable to the petitioners. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Jacob Freidus, docket Nos. 4319-63, 1206-68; Claire Britt, docket Nos. 4320-63, 1207-68.↩
2. We shall continue to refer to petitioner as Claire Freidus to describe the factual situation as of the years 1949 - 1960.↩
3. The parties here involved previously reached a settlement with respect to the years 1941 through 1948 and they have stipulated as to the effect of such settlement on the accumulated net transfer of funds as of December 31, 1948. See Joint Exhibit 19-S. ↩
4. The Court granted petitioner Claire Freidus at least five extensions of time after the original due date for filing a brief in these consolidated cases, with the last extension of time granted by this Court expiring on July 31, 1977. Despite the repeated extensions of time so granted, petitioner Claire Freidus has failed to file an original brief within the requisite time. Nor has any brief been filed in this matter by petitioner Jacob Freidus.↩
5. A valid corporate purpose must demonstrate the requisite relationship between the transferor corporation and the transferee such that a transfer of funds would be in the best interests of the transferring corporation at the corporate level. Wilkof v. Commissioner, T.C. Memo. 1978-496↩.